*191
 
 OPINION OF THE COURT
 

 Smith, J.
 

 This case requires us to determine the scope and enforceability of a prenuptial agreement executed over 30 years ago. For reasons that follow, we hold that the agreement does not constitute a waiver of maintenance but must be reviewed by the trial court as to whether it is unconscionable.
 

 The facts concerning the prenuptial agreement are largely undisputed. Plaintiff husband, now a 62-year-old practicing attorney, and defendant wife, a 55-year-old self-employed antiques dealer, were married on May 30, 1969. The parties separated in January 1995. Before the parties married, plaintiff drafted, and requested that defendant sign, a prenuptial agreement in which she waived her spousal property and elective rights. Specifically, in pertinent part, defendant agreed to “waive and renounce any and all rights that, and to which, [she] would otherwise be entitled to because of such marriage, whether present or future rights, to any and all property which [plaintiff] has now, or which he may acquire in the future,
 
 *192
 
 whether the same be real, personal, [or] mixed property, or of any kind or nature and wherever situated.”
 
 *
 

 At the time the agreement was executed, plaintiff was 30 years old, a practicing attorney, and the son of a practicing attorney who owned various real estate properties that he placed in plaintiff’s name. Defendant was 24 years old and had completed one year of college. Defendant claims that the parties were alone in her apartment when she signed the agreement. Plaintiff claims they were at his father’s office with a notary present. Notably, the parties do not dispute that defendant was not represented by counsel in the negotiating, drafting or signing of the document, nor that she signed the document.
 

 Twenty-five years later, in 1995, plaintiff initiated divorce proceedings. Defendant answered and counterclaimed demanding equitable distribution. Two years into the discovery phase of the action, plaintiff first raised the existence of the prenuptial agreement and asserted his intent to rely on that agreement as a defense to defendant’s claim for equitable distribution.
 

 Supreme Court adjudged the prenuptial agreement void on its face both because it violated the 1969 version of General Obligations Law § 5-311, which prohibited a wife from waiving her entitlement to support, and because it lacked compliance with the execution formalities under the current Domestic Relations Law § 236 (B) (3). The Appellate Division affirmed, finding that the agreement contained broad waiver language that necessarily constituted an impermissible waiver of support. The Appellate Division further found that even if the agreement were not void on its face, the parties’ marriage would toll the Statute of Limitations, thus allowing defendant to challenge the validity of the agreement on other grounds.
 

 Because we conclude that the agreement does not encompass a waiver of support, we reverse. However, we remit the case to Supreme Court for a determination of whether the agreement is unconscionable.
 

 Initially, we note that defendant is not time-barred from challenging the validity of the prenuptial agreement because
 
 *193
 
 this particular argument arises from, and directly relates to, plaintiffs claim that the agreement precludes equitable distribution of his assets. It is axiomatic that claims and defenses that arise out of the same transaction as a claim asserted in the complaint are not barred by the Statute of Limitations, even though an independent action by defendant might have been time-barred at the time the action was commenced (CPLR 203 [d];
 
 118 E. 60th Owners v Bonner Props.,
 
 677 F2d 200, 202-204;
 
 Rebeil Consulting Corp. v Levine,
 
 208 AD2d 819, 820;
 
 Maders v Lawrence,
 
 49 Hun 360;
 
 see generally,
 
 1 Weinstein-Korn-Miller, NY Civ Prac ¶ 203.25, at 2-140 — 2-142).
 

 Duly executed prenuptial agreements are accorded the same presumption of legality as any other contract
 
 (Matter of Sunshine,
 
 40 NY2d 875,
 
 affg
 
 51 AD2d 326). Indeed, there is a “strong public policy favoring individuals ordering and deciding their own interests through contractual arrangements”
 
 (Matter of Greiff,
 
 92 NY2d 341, 344). Thus, as with all contracts, we assume a deliberately prepared and executed agreement reflects the intention of the parties. Further, while we must be concerned with what the parties intended, we generally may consider their intent only to the extent that it is evidenced by their writing
 
 (Rodolitz v Neptune Paper Prods.,
 
 22 NY2d 383, 386-387). When evidence is lacking that both parties intended to violate the law, a contract that may be construed both lawfully and unlawfully should be construed in favor of its legality
 
 (Galuth Realty Corp. v Greenfield,
 
 103 AD2d 819;
 
 see also Great N. Ry. Co. v Delmar Co.,
 
 283 US 686, 691 [concluding, “where two constructions of a written contract are possible, preference will be given to that which does not result in violation of law”]).
 

 Applying these settled principles to the instant appeal, we find that the plain language of the agreement indicates that defendant waived only her right to distribution of property either then owned or later acquired. The agreement neither expressly nor implicitly refers to a release of plaintiffs support obligations to defendant. A waiver of rights to present and future interests in plaintiffs property, without more, does not constitute a waiver of the right to receive support. The courts below incorrectly construed the provision to be a waiver of the right to receive support, which would have invalidated the agreement under the 1969 version of the General Obligations Law § 5-311. This construction, however, belies the intent of the parties, who never contested plaintiffs duty to provide support until the courts below voided the agreement by grafting into the property waiver an additional waiver of support.
 

 
 *194
 
 Mindful of the fact that, under New York law, wives had no legal interest in their husbands’ property in 1969, we read the agreement to state defendant simply waived any present interest she may have had in plaintiffs property when the agreement was executed and also waived any future property rights she might acquire through subsequent changes in the law.
 

 Even if the Appellate Division correctly concluded that defendant’s waiver encompassed her right to receive support, the validity of support waivers in marital agreements is governed by the newly enacted version of General Obligations Law § 5-311, not the version of General Obligations Law § 5-311 that was repealed by the New York State Legislature. The general principle that the validity of a contract depends upon the law that existed at the time the contract was made does not appertain to variations of the law that are made due to changes in public policy
 
 (Goldfarb v Goldfarb,
 
 86 AD2d 459, 461-462;
 
 see also, Compania de Inversions Internacionales v Industrial Mtge. Bank,
 
 269 NY 22, 26). We would have applied the version of General Obligations Law § 5-311 that was in effect at the time plaintiff attempted to enforce the agreement. This version, which still exists today, allows either spouse to contract to relieve the other of a requirement of support except to the extent that the spouse may become a public charge, and represents a change in the public policy of this State. We further note that noncompliance with the execution formalities contained in Domestic Relations Law § 236 (B) (3) does not invalidate the prenuptial agreement, given that the agreement was made prior to the effective date of that subdivision
 
 (see,
 
 Domestic Relations Law § 236 [B] [3]).
 

 Supreme Court did not address the issue of unconscionability. While the Appellate Division concluded that “it also appears that the agreement could be held unconscionable” and was “manifestly unfair” (281 AD2d 301, 305), these considerations were not essential to its ruling. Defendant should now be permitted to contest the conscionability of the agreement before the trial court.
 

 Accordingly, the order of the Appellate Division should be reversed, with costs, the matter remitted to Supreme Court for further proceedings in accordance with this opinion and the certified question answered in the negative.
 

 Chief Judge Kaye and Judges Levine, Cipabick, Wesley, Rosenblatt and Gbaffeo concur.
 

 Order reversed, etc.
 

 *
 

 The agreement contained a second provision in which defendant further agreed to “waive the eight of election to take, or to make any demand for, contrary to the provisions of [plaintiffs] last will and testament, pursuant to the provisions of § 5-1.1 of the Estates, Powers and Trusts Law of the State of New York, as said section now exists or may hereinafter be amended.”