OPINION OF THE COURT
Robert A. Ross, J.
This application of Domestic Relations Law § 250, effective July 3, 2007, appears to be of first impression, there being no reported cases since the enactment of this statute, intended by the New York Legislature to address its stated legislative purpose of preserving intact marriages.
“It is unlikely in the context of a marriage that the party will move to contest or change the terms of prenuptial agreement until a proceeding has begun to dissolve the marriage itself. Most parties would not contest the validity or terms of a prenuptial agreement or agreements made during the marriage while their marriage is intact.” (See Sponsor’s Mem, Bill Jacket, L 2007, ch 104, reprinted in 2007 McKinney’s Session Laws of NY, at 1630.)
Prenuptial Agreements and Statute of Limitations
Marital agreements, both prenuptial and postnuptial, are contracts governed under principles of contract law (Rainbow v Swisher, 72 NY2d 106 [1988]; Bloomfield v Bloomfield, 97 NY2d 188 [2001]).
“It is judicial policy to encourage the fashioning of stipulations, including marital agreements, by which the parties agree in advance or during the marriage to the resolution of disputes that may arise after its termination, as a means of expediting and simplifying the resolution of disputes, and such agreements will not be lightly cast aside.” (Scheinberg, Outside Counsel, Conduct Following a Contract, NYLJ, Oct. *352 30, 2007, at 4, col 4.)
The statute of limitations applicable to such marital agreements was the six-year period as provided in CPLR 213. However, the tolling of the statute of limitations had been the perplexing subject of conflicting determinations between the Appellate Divisions of the First and Second Departments.
In the First Department, the Court tolled the period of limitations until the parties physically separated, one of the parties died, or until commencement of an action for divorce or separation. (See Bloomfield v Bloomfield, 281 AD2d 301 [2001]; Lieberman v Lieberman, 154 Misc 2d 749 [1992].)
In our Second Department, if the validity of the agreement was not challenged within six years of its execution, a challenge to the agreement was time-barred. (Pacchiana v Pacchiana, 94 AD2d 721 [1983]; Rubin v Rubin, 275 AD2d 404 [2000]; Matter of Neidich, 290 AD2d 557 [2002].)
The Court of Appeals, in Bloomfield v Bloomfield (97 NY2d 188, 193 [2001]), permitted a challenge to a 25-year-old prenuptial agreement, citing the provisions of CPLR 203 (d). This was not as a result of any “tolling,” but because such challenge “arises from, and directly relates to, plaintiffs claim that the agreement precludes equitable distribution of his assets.” (Bloomfield v Bloomfield, 97 NY2d at 193.)
CPLR 203 (d) provides:
“Defense or counterclaim. A defense or counterclaim is interposed when a pleading containing it is served. A defense or counterclaim is not barred if it was not barred at the time the claims asserted in the complaint were interposed, except that if the defense or counterclaim arose from the transactions, occurrences, or series of transactions or occurrences, upon which a claim asserted in the complaint depends, it is not barred to the extent of the demand in the complaint notwithstanding that it was barred at the time the claims asserted in the complaint were interposed.”
The provisions of CPLR 203 (d) allow a defendant to assert an otherwise untimely claim which rose out of the same transactions alleged in the complaint, but only as a shield for recoupment purposes, and do not permit the defendant to obtain affirmative relief. (Bloomfield, supra; Rosenblatt v Ackoff-Ortega, 300 AD2d 137 [2002]; Rothschild v Industrial Test Equip. Co., 203 AD2d 271 [1994]; Sawyer v Wight, 196 F Supp 2d 220 *353 [2002]; DeMille v DeMille, 5 AD3d 428 [2004], after remand 32 AD3d 411 [2006].)
Statutory Guidance and Effect of Domestic Relations Law §250
Domestic Relations Law § 250 provides:
“Agreements relating to marriage; statute of limitations
“1. The statute of limitations for commencing an action or proceeding or for claiming a defense that arises from an agreement made pursuant to subdivision three of part B of section two hundred thirty-six of this article entered into (a) prior to a marriage or (b) during the marriage, but prior to the service of process in a matrimonial action or proceeding, shall be three years.
“2. The statute of limitations shall be tolled until (a) process has been served in such matrimonial action or proceeding, or (b) the death of one of the parties.
“3. The provisions of this section shall not apply to a separation agreement or an agreement made during the pendency of a matrimonial action or in settlement thereof.”
The plain reading of Domestic Relations Law § 250 provides that the statute of limitations for commencing a proceeding “that arises from” a prenuptial agreement or marital agreement is tolled until either process is served in a matrimonial action or proceeding or one of the parties to the agreement dies. (Domestic Relations Law § 250 [2]; see Scheinkman, Supp Practice Commentaries, McKinney’s Cons Laws of NY, Book 14, Domestic Relations Law § 250; see also Rosenberg, For Whom the Pre-Nup Tolls — Does the New DRL 250 Really Put an End to the Discussion?, 9 NY Fam L Monthly [No. 9] [May 2008].)
But, the final session law (L 2007, ch 226, § 2) indicating the effective date of the statute provides:
“This act shall take effect on the same date [July 3, 2007] as a chapter [L 2007, ch 104] of the laws of 2007 amending the domestic relations law relating to the statute of limitations for agreements relating to marriage, as proposed in legislative bills numbers S.4564 and A.3074, takes effect; and shall not apply *354 to any agreement where the commencement of an action thereon was barred under the civil practice law and rules in effect immediately prior to such effective date.” (Emphasis added.)
A statute should not be extended by construction beyond its express terms or reasonable implication to its language. (McKinney’s Cons Laws of NY, Book 1, Statutes § 94.) By expressly providing that Domestic Relations Law § 250 “shall not apply to any agreement that was barred under the civil practice law and rules in effect immediately prior to such effective date” (L 2007, ch 226, § 2), then the prenuptial agreement before me, executed on January 26, 2001, is more than six years old on the effective date of this statute and is time-barred by the provisions of CPLR 213. Accordingly, all provisions of Domestic Relations Law § 250, including tolling of the statute of limitations, are inapplicable here.
Analysis
Prospectively, the public policy of preserving intact marriages is addressed by the Legislature by the tolling provisions of Domestic Relations Law § 250 (2). Under section 250, the statute of limitations for commencing a proceeding or claiming a defense “that arises from” a prenuptial agreement or marital agreement is tolled until either process is served in a matrimonial action or proceeding or one of the parties to the agreement dies. (Domestic Relations Law § 250 [1], [2] [b].) But for many agreements, such as in the instant case, that are barred pursuant to the final session law (L 2007, ch 226, § 2) that render Domestic Relations Law § 250 inapplicable because the agreement is time-barred (CPLR 213), “no court has the authority to create ... an exception to the statute of limitations” (DeMille v DeMille, 5 AD3d 428, 429 [2004], after remand 32 AD3d 411 [2006]; Scheuer v Scheuer, 308 NY 447 [1955]; Mack v Mendels, 249 NY 356, 359 [1928]). If there was any intention to deny application of CPLR 203 (d) to agreements that are inapplicable to Domestic Relations Law § 250, the Legislature would have so provided. (See Statutes § 94.) Accordingly, the defendant here may attack the validity of the time-barred prenuptial agreement, but only as a defense raised in her answer, only as a shield for recoupment purposes, and not to obtain affirmative relief. (Bloomfield v Bloomfield, 97 NY2d 188 [2001]; Rosenblatt v Ackoff-Ortega, 300 AD2d 137 [2002]; DeMille, supra; see also Sawyer v Wight, 196 F Supp 2d 220 [2002]; CPLR 203 [d].)
*355 Counterclaims and Affirmative Defenses
Plaintiff seeks an order granting summary judgment dismissing defendant’s first, second, and third counterclaims upon the grounds that such claims are time-barred, and/or such claims can only be enforced by plenary action, and that such counterclaims fail to set forth sufficient facts to state viable causes of action. Plaintiff also seeks an order granting summary judgment dismissing the portion of defendant’s answer requesting spousal maintenance, equitable distribution, and exclusive use and occupancy on the grounds that such issues have been resolved pursuant to the parties’ prenuptial agreement. As a separate branch of the motion, plaintiff requests exclusive use and occupancy of the marital residence and an order of protection.
Defendant opposes all such applications.
The parties were previously divorced, but were subsequently remarried. Plaintiff commenced this action for divorce by filing and serving a summons and complaint demanding judgment on the grounds of constructive abandonment, and also seeks to incorporate the terms of the parties’ January 26, 2001 prenuptial agreement.
Defendant wife filed and served an answer asserting several counterclaims. For the first and second counterclaims she disputes the validity of the prenuptial, and alleges it should be vacated, set aside, rescinded and/or declared null and void upon the grounds that she was not represented by an attorney in connection with the preparation and execution of the prenuptial; such prenuptial was prepared by plaintiff’s attorneys; such agreement was presented to defendant less than one week prior to and signed less than two days prior to the parties’ marriage; there was no adequate consideration for the prenuptial; plaintiff failed to provide complete and accurate disclosure regarding assets and income; and defendant did not understand the legal consequence of her execution of such prenuptial.
Defendant’s additional counterclaims, labeled as second and third, allege that there existed a confidential and intimate relationship between the parties, such that defendant placed her trust and confidence in plaintiff, who abused such relationship by persuading her to execute such prenuptial; and such prenuptial should be vacated, set aside, rescinded and declared null and void by reason of fraud, undue influence or overreaching by plaintiff.
*356 Defendant’s third counterclaim also alleges that such prenuptial was unfair and unreasonable when made and is presently unconscionable and inequitable.
Plaintiff denies each and every allegation set forth in defendant’s first, second and third counterclaims and sets forth as a first affirmative defense that defendant’s three counterclaims are barred by the statute of limitations and/or laches. The second affirmative defense alleges that each of the three counterclaims fails to set forth sufficient facts to constitute a viable cause of action.
Accordingly, plaintiffs application to dismiss each of defendant’s counterclaims is denied on the theory that they are time-barred. (See Bloomfield v Bloomfield, supra.)
With respect to plaintiffs application to dismiss defendant’s counterclaims alleging that such may only be enforced by plenary action, such contention is incorrect as a matter of law. A party seeking to challenge a prenuptial agreement may do so by means of a counterclaim. (See Darragh v Darragh, 163 AD2d 648 [1990]; Bailey v Assam, 269 AD2d 344 [2000].)
A request for summary judgment cannot be granted unless it clearly appears that no material triable issue of fact exists. (Phillips v Kantor & Co., 31 NY2d 307 [1972]; Glick & Dolleck v Tri-Pac Export Corp., 22 NY2d 439 [1968].) The movant must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence in admissible form to demonstrate the absence of any material issue of fact. (Friends of Animals v Associated Fur Mfrs., 46 NY2d 1065 [1979].) When the movant has made a prima facie case, the burden of going forward shifts to the party opposing the motion. (Zuckerman v City of New York, 49 NY2d 557 [1944].) It is a drastic remedy which requires that the party opposing the motion be accorded every favorable inference. Issues of credibility may not be determined and must await the trial. (Westhill Exports v Pope, 12 NY2d 491 [1963].)
Here, the defendant has sufficiently detailed facts, which if true and considered in their totality, demonstrate that a fiduciary relationship existed between the parties and it is a factual issue as to whether plaintiff had an unfair advantage amounting to his overreaching with respect to the parties’ prenuptial agreement. For example, defendant states that the parties had been married and divorced in 1995 prior to their remarriage in 2001, and had a five-year exclusive intimate relationship and lived together in plaintiffs house. Defendant, who worked in *357 plaintiffs office was 100% financially dependent on plaintiff, a successful physician, 20 years her senior. The parties had two children out of wedlock, one who was born prematurely at three pounds, three ounces only six months prior to the wedding. The infant remained in the neonatal intensive care unit for 28 days prior to being released to defendant for round-the-clock care. Being handed a complex legal document just six days prior to the wedding, plaintiff consulted with but did not retain an attorney, who, just two days prior to the wedding advised her he would not represent her if she even considered signing such prenuptial agreement.
The parties’ prenuptial agreement specifically provides:
“WHEREAS, the parties desire: (a) to conform and define the nature of the property that will continue to be the separate property of each of the parties despite their marriage to each other (the ‘Marriage’) and to define what property will become marital property by virtue of this Agreement and to limit the creation of marital property by virtue of the Marriage under the laws of the State of New York; and (b) to fix and limit all of their respective rights and claims in each other’s property and estate or claims to support from one another which may arise by reason of the Marriage, in lieu of any and all rights, claims, interests and obligations provided under applicable law if no agreement were made or existed between the parties; and
“WHEREAS, each party has disclosed to the other party all of the material details of his or her respective financial condition (i.e., his or her assets, liabilities, income and expenses) and has annexed to this Agreement Schedule ‘A’ (pertaining to NEIL), Schedule ‘B’ (pertaining to LAUREN) and Schedule ‘C’ (pertaining to the parties jointly) which summarize the approximate current values of their assets; . . .
“7.2 The parties acknowledge and understand that the financial statements attached hereto as Schedules ‘A’, ‘B’ and ‘C’ may or may not exactly reflect the current market value of the assets listed thereon, and the current market value of said assets may be more or less than the values set forth in said Schedules. Each party has been afforded the opportunity to further investigate the current market *358 value of the assets listed on said financial statements and any other assets believed to be owned, controlled or enjoyed by the other party and by executing this Agreement hereby waives any and all right to claim that the other party has not made a full and complete disclosure of his or her assets and current financial condition. Each party acknowledges and agrees that even if the other’s net worth and income were ten times the amount or one quarter of the amounts disclosed to each of them, such difference would not alter his or her decision to enter into this Agreement.”
The prenuptial schedules A, B, and C, as indicated above, which were included as an exhibit in plaintiffs moving papers, are completely blank and devoid of any information. The missing assets reflect a contradiction within the agreement which specifically refer to their inclusion as “schedules.” Plaintiff, himself, acknowledges that the schedules of assets were missing and further suggests that defendant knew the schedules to be missing, waived disclosure and signed the agreement against the advice of the attorney that represented her. Considering all of the above and a review of the defendant’s contentions which sufficiently articulate and indicate the facts are disputed, plaintiffs motion for summary judgment upon the first, second and third counterclaims is denied.
With respect to plaintiffs application to grant him summary judgment dismissing the portion of defendant’s answer requesting spousal maintenance based upon the grounds that such issues have been resolved pursuant to the parties’ prenuptial agreement, such application is denied. Provisions regarding maintenance must be “fair and reasonable at the time of the making of the agreement and . . . not unconscionable at the time of the entry of the final judgment.” (Domestic Relations Law § 236 [B] [3].) Here, there Eire questions of fact, such as whether defendant’s alleged waiver of maintenance is valid, warranting a denial of plaintiffs application. Even if the waiver is found to be valid, there must be a determination regarding whether such a waiver was fair and reasonable at the time of the making of the agreement and also whether such is not unconscionable at the time of the entry of the judgment. (See Domestic Relations Law § 236 [B] [3].)
With respect to plaintiffs application to dismiss defendant’s counterclaims alleging that such claims do not set forth sufficient facts, such application is denied. On a motion to dismiss *359 for failure to state a viable cause of action, the pleadings are to be liberally construed, the allegations are to be accepted as true, and the plaintiff is to be accorded the benefit of every possible favorable inference. (See Leon v Martinez, 84 NY2d 83 [1994]; Vestal v Vestal, 273 AD2d 461 [2000].) The claims alleged in the counterclaims each present viable causes of action.
With respect to that portion of plaintiffs application regarding exclusive use and occupancy, and an order of protection, such issues are scheduled for an evidentiary hearing before me after which a determination may be made.
Any requested relief not addressed specifically is deemed denied.