[901 NYS2d 214]

Leslie Elliot Strong, Appellant, v Madeline Dubin, Respondent.

First Department, May 13, 2010

**APPEARANCES OF COUNSEL**

*Lee A. Rubenstein*, New York City, and *Blank Rome, LLP*, New York City (*Leonard G. Florescue* of counsel), for appellant.

*Law Offices of Denise Mortner Kranz & Associates*, New York City (*Steven K. Meier* and *Denise Mortner Kranz* of counsel), for respondent.

**OPINION OF THE COURT**

ANDRIAS, J.P.

The primary issue before us is whether the parties' prenuptial agreement contains an enforceable waiver of defendant wife's interest in the marital portion of plaintiff husband's retirement assets. In analyzing this issue, we consider principles of contract interpretation in the context of prenuptial agreements and revisit our determination in *Richards v Richards* (232 AD3d 303, 303 [1996]), where we found that under the Employee Retirement Income Security Act "only a spouse can waive spousal rights to employee plan benefits, that a fiancee is not a spouse, and that such rights, therefore, cannot be effectively waived in a prenuptial agreement."

After entering into a prenuptial agreement, the parties were married on April 6, 1992. In 2005, plaintiff commenced this matrimonial action and defendant moved to have the prenuptial agreement set aside. The trial court confirmed a Special Referee's report that found the agreement to be valid and enforceable and denied defendant's motion. Defendant appealed and we affirmed (48 AD3d 232, 233 [2008]), finding, among other things, that "[d]efendant admitted that she read the agreement before signing it, and while she did not understand the 'legalese' (i.e., statutory references), she did understand that the parties' properties would remain separate." We also

found that there was no attempt by plaintiff to conceal or misrepresent the nature or extent of his assets, with which defendant was personally acquainted.

While the prior appeal was pending, defendant moved for a declaratory judgment, or alternatively, discovery and a hearing, on her entitlement to certain assets, including plaintiff's retirement assets and the marital apartment. The motion court, relying on *Richards v Richards* (232 AD2d 303 [1996], *supra*), found that there was no enforceable waiver of defendant's interest in the retirement assets and granted defendant's motion to the extent of ordering discovery and, if necessary, a hearing to determine (a) the value of the marital-property portion of plaintiff's retirement funds, to be divided among the parties by the percentages laid out in the prenuptial agreement; and (b) whether marital assets were used to purchase the apartment, rendering it marital property. We now modify, finding, for the reasons set forth below, that contrary to the motion court's holding, the prenuptial agreement contained a valid waiver of defendant's interest in the marital portion of plaintiff's retirement assets.

Prenuptial agreements addressing the ownership, division or distribution of property must be read in conjunction with Domestic Relations Law § 236 (B), which provides that, unless the parties agree otherwise in a validly executed prenuptial agreement pursuant to section 236 (B) (3), upon dissolution of the marriage, marital property must be distributed equitably between the parties, while separate property shall remain separate (*see* Domestic Relations Law § 236 [B] [5] [a]-[c]). As with all contracts, prenuptial agreements are construed in accord with the parties' intent, which is generally gleaned from what is expressed in their writing (*see Van Kipnis v Van Kipnis*, 11 NY3d 573, 577 [2008]). "[T]he intent to override the rules of equitable distribution—whether by express waiver, or by specifically designating as separate property assets that would otherwise be considered marital property under New York law—must be clearly evidenced by the writing" (*Tietjen v Tietjen*, 48 AD3d 789, 791 [2008]).

Still, when interpreting a prenuptial agreement "the court should arrive at a construction that will give fair meaning to all of the language employed by the parties to reach a practical interpretation of the expressions of the parties so that their reasonable expectations will be realized" (*Matter of Schiano v Hirsch*, 22 AD3d 502, 502 [2005]; *see also Kass v Kass*, 91 NY2d

554, 566 [1998]; *Noach v Noach*, 53 AD3d 602 [2008]). "Particular words should be considered, not as if isolated from the context, but in the light of the obligation as a whole and the intention of the parties as manifested thereby" (*Kass v Kass*, 91 NY2d at 566 [internal quotation marks]). "A contract should not be interpreted in such a way as would leave one of its provisions substantially without force or effect" (*Matter of John E. Andrus Mem. Home v DeBuono*, 260 AD2d 635, 636 [1999], *lv denied* 93 NY2d 813 [1999]).

Here, the parties' prenuptial agreement, read as a whole and giving effect to all provisions, expresses an intent to opt out of the statutory scheme governing equitable distribution, which encompasses plaintiff's retirement funds (*see Vendome v Vendome*, 41 AD3d 837 [2007]; *Moor-Jankowski v Moor-Jankowski*, 222 AD2d 422 [1995]). The recitals to the prenuptial agreement provide that "[t]he parties desire, in advance of their marriage, to settle their financial, property, and all other rights, privileges, obligations and matters with respect to each other *arising out of the marital relationship* and otherwise, as more particularly hereinafter provided" (emphasis added). Article I of the prenuptial agreement provides:

> "The parties, having considered their respective financial circumstances and the factors set forth for the equitable distribution of property in Section 236, Part B, Subdivision 5 of the Domestic Relations Law of the State of New York, hereby agree, *pursuant to Subdivision 3 of the said statute*, as follows with respect to the division of all marital and separate property *either now in existence or which is hereafter acquired*" (emphasis added).

Article I, paragraph 1 of the prenuptial agreement provides that "it is the intention [of the parties] . . . that the property owned by each of them shall remain completely and wholly vested in each such person in whose ownership it presently exists." Article I, paragraphs 2 and 3 sets forth the parties' rights with respect to an apartment owned by plaintiff which was to serve as the marital residence. Article I, paragraph 4 sets forth the parties' rights with respect to furniture, silver and crystal which each party owned. Article I, paragraph 5 provides:

> "Notwithstanding the foregoing Paragraphs 1 through 4, inclusive, in the event that [the parties] maintain joint banking or savings accounts or joint

investment accounts then, such accounts shall be deemed marital property. Any assets purchased by [the parties] from utilized proceeds of any such joint account shall, similarly, be deemed marital property. [The parties] agree that marital property shall, in the event of a termination of the marriage be divided seventy (70%) percent to [plaintiff] and thirty (30%) to [defendant]. If any property is not owned jointly but, becomes marital property by reason of this paragraph, then in such event, either [plaintiff or defendant], as the case may be, shall have the right to assert a claim under the spouses 'right of election.' "

While article I is not artfully drawn, it expressly references Domestic Relations Law § 236 (B) (3), which provides that a prenuptial agreement may include, among other things a "provision for the ownership, division or distribution of separate and marital property," and reflects an intent to opt out of equitable distribution "with respect to the division of all marital and separate property *either now in existence or which is hereafter acquired*" (emphasis added), which encompasses the retirement funds at issue. To hold otherwise would render the reference to property that is "hereafter acquired" meaningless, leaving that provision without force or effect.

Indeed, the only assets specifically designated to be "marital property" are the prospective joint banking, savings or investment accounts or assets purchased from the proceeds of those joint accounts set forth in article I, paragraph 5. The retirement assets in question were not held in joint names or funded with money from an account in the joint names of the parties and are not marital property within the meaning thereof.

This interpretation is consistent with article IV, paragraph 8, which, read as a whole, resolves any ambiguity in article I and confirms the parties' intent to waive equitable distribution rights (*see Kass v Kass*, 91 NY2d at 566-567; *MacAllister v MacAllister*, 275 AD2d 1015, 1016 [2000]). Paragraph 8 provides:

"Except as otherwise expressly provided herein, each party hereby releases . . . the other, of and from all causes of action, claims, rights, or demands, whatsoever, in law or in equity (*including, but not limited to claims for equitable distribution, distribu-*

*tive award or claims against the separate property of the other spouse*) which either of the parties hereto ever had, or now has, against the other, except (a) nothing herein contained shall be deemed to prevent either party from enforcing the terms of this Agreement or from asserting such claims as are reserved by this Agreement to each party against the estate of the other; provided, however, that the claims so asserted arise out of a breach of this Agreement; and (b) nothing herein contained shall impair or waive or release any and all cause [*sic*] of action for divorce, annulment or separation, or any defenses which either may have to any divorce, annulment or separation action which may hereafter be brought by the other" (emphasis added).

The contention that this waiver clause encompasses only property which either of the parties held at the time the prenuptial agreement was executed, to the exclusion of after-acquired property, is unsupportable. True, the waiver clause states that it is a release of all causes of action, claims, rights or demands whatsoever in law and in equity "which either of the parties hereto ever had, or now has, against the other." However, the illustrative claims listed include, but are not "limited to claims for equitable distribution, distributive award or claims against the separate property of the other spouse." At the time the prenuptial agreement was signed, neither party had any of these delineated claims, all of which would accrue in the future, once the parties were married. Similarly the exceptions for breach of the antenuptial agreement and divorce demonstrate that the waiver clause was intended to apply to future causes of action that would accrue after the marriage. In light of this language, to limit the claims to property that either party had at the time of the marriage would render the waiver clause meaningless in that property owned by either party at the time the prenuptial agreement was entered into would already be separate property as to which there is no right to equitable distribution or a distributive award (Domestic Relations Law § 236 [B] [1] [d] [1]).

Insofar as this Court's determination in *Richards v Richards* (232 AD2d 303 [1996], *supra*) would preclude the waiver of pension rights in the event of divorce in a prenuptial agreement, it should not be followed in that it fails to recognize the distinction between waivers of survivor benefits and other

pension benefits. For purposes of equitable distribution, a waiver of any interest in a pension as marital property by an otherwise valid prenuptial agreement is not prohibited by the Employee Retirement Income Security Act of 1974 (ERISA) (29 USC § 1001 *et seq.*), as amended by the Retirement Equity Act of 1984 (REA) (*see Moor-Jankowski*, 222 AD2d at 423; *Edmonds v Edmonds*, 184 Misc 2d 928 [Sup Ct, Onondaga County 2000]).

ERISA was amended by the REA "to ensure that a participant's spouse receives survivor benefits from a retirement plan even if the participant dies before reaching retirement age" (*Hurwitz v Sher*, 982 F2d 778, 781 [2d Cir 1992], *cert denied* 508 US 912 [1993]), with REA setting forth the conditions on the waiver of survivor benefits (*see* 29 USC § 1055 [c] [1], [2]). Although a prenuptial agreement will not constitute an effective waiver of spousal survivorship benefits mandated by ERISA unless it conforms to those waiver requirements, ERISA does not preempt or preclude the recognition, implementation, or enforcement of an otherwise valid prenuptial agreement with regard to a divorce proceeding. As the court in *Edmonds* (184 Misc 2d at 931) persuasively explained:

> "Apart from the survivor benefit of REA, ERISA does not mandate that other benefits be provided to a participant's spouse. In fact, ERISA expressly prohibits alienation of benefits by the plan participant, except by a Qualified Domestic Relations Order (QDRO) issued by a State court in a matrimonial action under the State's domestic relations law (29 USC § 1056 [d]). ERISA creates no substantive rights in the case of divorce, but only accommodates, by the provisions governing QDROs, rights created by State matrimonial law. In New York, vested or matured rights in a pension plan are considered marital property subject to distribution in a divorce action to the extent that the benefits result from employment by the participant after the marriage and before the commencement of the divorce action. There is nothing in the matrimonial law of New York prohibiting a spouse from waiving his or her interest in such marital property by agreement made before or during the marriage in accordance with Domestic Relations Law § 236 (B) (3)" (citation omit-

ted; *see also Savage-Keough v Keough*, 373 NJ Super 198, 861 A2d 131 [2004]; *Sabad v Fessenden*, 825 A2d 682, 2003 PA Super 2002 [2003], *appeal denied* 575 Pa 697, 836 A2d 122 [2003]; *Critchell v Critchell*, 746 A2d 282 [DC 2000]; *Stewart v Stewart*, 141 NC App 236, 541 SE2d 209 [2000]; *In re Marriage of Rahn*, 914 P2d 463 [Colo 1995]; *Ryan v Ryan*, 659 NE2d 1088 [Ind 1995]).

The motion court correctly directed discovery and a possible hearing on the issue of whether $50,000 of defendant's separate property was used to purchase the marital apartment held in plaintiff's name. The record shows that plaintiff had owned a separate apartment in the same building at the time of the marriage. That apartment was sold in 1995, at which time the new marital apartment was purchased in plaintiff's name. As to that purchase, defendant avers that she deposited $50,000 from her separate property into the parties' joint account, then drew a check from the joint account in that amount, which was deposited into the husband's business account and used for the purchase of the apartment. In support, defendant offered a document she claims is her check register for her separate bank account, which indicates that she transferred $50,000 to the joint account for a "closing" on July 7, 1995, and the bank statement for the joint account, which indicates a deposit of $50,000 on that date and a payment of $50,000 on July 11, 1995. Although plaintiff challenged this proof as suspect and insufficient, this evidence was sufficient to warrant discovery and a hearing given plaintiff's failure to present evidence disproving defendant's claim.

Accordingly, the order of the Supreme Court, New York County (Laura E. Drager, J.), entered on or about August 1, 2008, which, to the extent appealed from as limited by the briefs, granted defendant's motion for a declaratory judgment to the extent of ordering discovery and, if necessary, a hearing, on the issues of the value of the marital-property portion of plaintiff's retirement funds, its division in accordance with the prenuptial agreement, and whether marital assets were used to purchase the marital apartment, should be modified, on the law, to deny defendant's motion with respect to plaintiff's retirement funds and declare that they are plaintiff's separate property in which defendant has no interest, and otherwise affirmed, without costs.

SWEENY, NARDELLI, CATTERSON and DEGRASSE, JJ., concur.

Order, Supreme Court, New York County, entered on or about August 1, 2008, modified, on the law, to deny defendant's motion with respect to plaintiff's retirement funds and declare that they are plaintiff's separate property in which defendant has no interest, and otherwise affirmed, without costs.