(March 22, 2016)

■ ANONYMOUS, Appellant, v ANONYMOUS, Respondent. [27 NYS3d 541]—

Order, Supreme Court, New York County (Ellen Gesmer, J.), entered May 4, 2015, which, to the extent appealed from, denied plaintiff wife's cross motion for partial summary judgment declaring that a condominium apartment located at 195 Hudson Street is the sole and separate property of plaintiff under the terms of the parties' prenuptial agreement, and granted defendant husband's motion for temporary maintenance, modified, on the law, to deny defendant's motion for temporary maintenance, and otherwise affirmed, without costs.

The parties executed a trust agreement that designates the parties, individually and collectively, as "Trustor" of a trust that purchased the apartment at issue. The agreement was not valid because the parties' signatures were never properly acknowledged. We agree with the wife that the agreement, which is unenforceable, cannot be considered as evidence (Selinger v Selinger, 44 AD3d 341, 342 [1st Dept 2007]). Nonetheless, issues of fact exist whether the parties intended to jointly own the apartment, and whether the husband was involved in any fraud in the preparation and execution of the trust agreement (see generally Ta Chun Wang v Chun Wong,

163 AD2d 300 [2d Dept 1990], *lv denied* 77 NY2d 804 [1991], *cert denied* 501 US 1252 [1991]). Thus, upon the motion court's invalidation of the trust agreement, it properly declined to decide whether the deed should be reformed to reflect the wife or both parties as the true owner (*US Bank N.A. v Lieberman*, 98 AD3d 422, 423-424 [1st Dept 2012]).

Although the wife funded the purchase of the apartment and ordinarily would be considered the settlor (*see Guaranty Trust Co. of N.Y. v New York Trust Co.*, 297 NY 45, 50 [1947]), the husband avers that the parties had agreed that the apartment would be joint property, and that consistent with that intention, he made certain payments towards maintenance and renovations. The parties' prenuptial agreement is not dispositive of the issue, as it does not list the apartment as the wife's separate property. In addition, it merely defines joint property as that "titled in the joint names of the parties," and in this case the apartment is titled in the name of the invalidated trust. Reformation is an equitable remedy and the parties' intent, as well as any questions of unclean hands, are relevant to the court's determination. These issues must be explored at a hearing. Thus, the wife's cross motion for partial summary judgment was properly denied.

After this action was commenced, the husband moved for an order awarding him temporary spousal support. The wife opposed the motion arguing, inter alia, that the parties' prenuptial agreement contains a waiver of maintenance, both temporary and final. The court granted the husband's motion and awarded him interim support, finding that the agreement did not contain the statutory language for waiving temporary maintenance, purportedly required by Domestic Relations Law former § 236 (B) (5-a) (f).

The motion court improperly granted the husband's application for temporary maintenance. At the outset, the court should not have applied the requirements of Domestic Relations Law former § 236 (B) (5-a) (f) to the parties' prenuptial agreement. That subdivision, which mandated the inclusion of certain language about temporary maintenance, is not applicable because the parties' prenuptial agreement was entered into prior to the effective date of this statutory provision.

New York has a "strong public policy favoring individuals ordering and deciding their own interests through contractual arrangements, including prenuptial agreements" (*Matter of Greiff*, 92 NY2d 341, 344 [1998]). "Duly executed prenuptial agreements are accorded the same presumption of legality as any other contract" (*Bloomfield v Bloomfield*, 97 NY2d 188, 193

[2001]), and like all contracts, "are construed in accord with the parties' intent, which is generally gleaned from what is expressed in their writing" (*Van Kipnis v Van Kipnis*, 11 NY3d 573, 577 [2008]). Thus, a waiver of temporary maintenance will be enforced as long as the parties' intent to do so is "clearly evidenced by the writing" (*Strong v Dubin*, 75 AD3d 66, 68 [1st Dept 2010] [internal quotation marks omitted]).

Applying these principles, we find that the broad and expansive language used by the parties in their agreement forecloses the husband from seeking any kind of spousal support, including temporary support. After acknowledging and representing that they are "fully capable of being self supporting," the parties agreed to "waive any and all claims for spousal support and/or maintenance" "both now and in the future." By using the words "any and all," the parties, in this particular agreement, clearly signaled their intention that the waiver would encompass both temporary and final awards of spousal support. And the words "in the future" can only mean any time after the agreement was executed, which necessarily includes when the husband's present motion was made.

Further, in the agreement, the maintenance waiver appears below the heading "MAINTENANCE/SPOUSAL SUPPORT UPON TERMINATION OF MARRIAGE." Under Article I of the agreement, the "termination of the marriage" is "deemed to have occurred," inter alia, "upon commencement or institution of any matrimonial action to dissolve or annul the marriage . . . by either party." Thus, by tying the maintenance waiver to the "termination of the marriage," as that term is defined in the agreement, the parties clearly intended the waiver to cover any maintenance request made, as here, after the commencement of a divorce action (*see Valente v Valente*, 269 AD2d 389, 389-390 [2d Dept 2000] [temporary maintenance foreclosed where the parties, who were separated, agreed to waive maintenance in the event of separation, divorce or annulment]; *Clanton v Clanton*, 189 AD2d 849, 850 [2d Dept 1993] [denying request for temporary maintenance where the prenuptial agreement renounced all claims "under any circumstances" for maintenance in the event of the "breakup" of the marriage by "separation or otherwise"]).

The parties' failure to use the terms "temporary support" or "interim support" does not warrant a different result. Although the dissent acknowledges that "no particular catechism is required to waive temporary maintenance claims," it nevertheless finds the agreement ambiguous and suggests that the parties may only have intended to waive a final award of mainte-

nance. No fair reading of the agreement supports that conclusion. When read as a whole, the agreement contains no ambiguity as to whether the parties intended to waive temporary maintenance. As noted, the agreement waives "any and all" maintenance claims, "now and in the future." Contrary to the dissent's view, there is nothing imprecise about the phrase "any and all." Indeed, this Court has repeatedly found the use of that phrase to be "clear" (*see e.g. Miller v Miller*, 82 AD3d 469, 469 [1st Dept 2011]; *Coby Group, LLC v Kriss*, 63 AD3d 569, 570 [1st Dept 2009]; *Broadcast News Networks, Inc. v Loeb & Loeb, LLP*, 40 AD3d 441 [1st Dept 2007]). Further, although minimized by the dissent, the agreement explicitly states that the parties are "fully capable of being self supporting," which is another indicia that neither intended to seek any kind of maintenance.

The dissent also discounts the heading above the maintenance waiver that makes clear that the parties intended to waive "any and all" spousal support claims that arise after the initiation of a divorce action, which necessarily includes temporary support. The definition in Article I of "termination of the marriage" shows that the parties, who were both represented by counsel, recognized that there is a difference between the filing of a divorce action and the issuance of a final judgment of divorce. They specifically provided that the agreement's broad maintenance waiver goes into effect upon the initiation of the divorce case, and not when the final judgment is rendered.

The cases relied upon by the dissent are distinguishable. In the prenuptial agreement in *Lennox v Weberman* (109 AD3d 703, 704 [1st Dept 2013]), the defendant waived any claim to a *final* award of maintenance, and there was no express agreement to exclude an award of temporary maintenance. Here, in contrast, the parties did not limit themselves to waiving final maintenance, but rather waived "any and all" maintenance "now and in the future." Thus, unlike *Lennox*, the prenuptial agreement here, especially when read in conjunction with the parties' definition of "termination of the marriage," reflects a clear intent to exclude temporary support. In *Tregellas v Tregellas* (169 AD2d 553, 553 [1st Dept 1991]), the Court merely found that the particular prenuptial agreement in that case did not bar an award of temporary support. There is no indication in *Tregellas* that the parties used the expansive language employed here or that they tied the waiver of maintenance to all support requests made after commencement of a matrimonial action. Finally, *McKenna v McKenna* (121 AD3d 864 [2d

Dept 2014]) contains no facts as to the specific wording of the prenuptial agreement and does not resolve the issue presented here.

The dissent effectively holds that parties to a prenuptial agreement must include the terms "temporary maintenance" or "interim spousal support" if they wish to waive these claims. No case has ever held this, and it is inaccurate for the dissent to claim that such a requirement is not mandating a particular catechism. Counsel who represented the parties when they signed the agreement cannot be faulted, as the dissent implies, for failing to include these "magic words" because no court had ever required that they do so. Although the current dispute would have been obviated by the use of such language, the critical question is whether the waiver executed by the parties unambiguously encompassed both temporary and final maintenance, which it did.

Even though one of this Court's cases uses the word "express" when talking about waivers of temporary maintenance, in *Strong v Dubin* (75 AD3d 66), we emphasized that when interpreting a prenuptial agreement " '[p]articular words should be considered, not as if isolated from the context, but in the light of the obligation as a whole and the intention of the parties as manifested thereby' " (*id.* at 69, quoting *Kass v Kass*, 91 NY2d 554, 566 [1998]). All that is required for an effective waiver is that the parties' intent to opt out of the statutory scheme be "clearly evidenced by the writing" (*Strong v Dubin*, 75 AD3d at 68 [internal quotation marks omitted]).* The maintenance provision here, read as a whole and in the context of the entire agreement, showed the parties' clear intent to waive all forms of spousal support. It is difficult to understand how a broad provision such as the one here could be interpreted in any way except as a complete waiver of all maintenance.

This case presents a simple question of contractual interpretation, and has nothing to do with the court's discretion in fashioning maintenance awards. It involves the interpretation of a duly executed prenuptial agreement, which is given the same presumption of legality as any other contract (*Bloomfield v Bloomfield*, 97 NY2d at 193), a principle that is well established in this state's jurisprudence. Here, both parties, represented by counsel, contracted to waive all claims of

---

* Although Domestic Relations Law § 236 (B) (3) also provides that maintenance provisions be fair and reasonable at the time the agreement was entered into, and not unconscionable at the time of entry of final judgment, this case presents no challenge to the prenuptial agreement on either of these grounds.

spousal support, both temporary and final, and they should be held to their bargain. Concur—Friedman, J.P., Andrias and Richter, JJ.

Acosta, J., dissents in part in a memorandum as follows: In analyzing and interpreting a prenuptial agreement to determine the parties' intent, we must be guided by the plain language of the agreement. The majority eschews this basic principle of contract law in this matter, finding that an imprecise and murky waiver of maintenance in the prenuptial agreement nevertheless bars the defendant husband from an award of temporary maintenance. Since our precedent has long required waivers of temporary maintenance to be clear and unequivocal, and because the waiver here did not satisfy that standard, I respectfully dissent and part company with the majority's finding that the motion court abused its discretion by awarding temporary maintenance to defendant.

For a quarter century, our jurisprudence has adhered to the principle that "[a] prenuptial agreement waiving any right to maintenance does not bar temporary relief prior to dissolution of the marriage" (*Tregellas v Tregellas*, 169 AD2d 553, 553 [1st Dept 1991]; *see also Lennox v Weberman*, 109 AD3d 703, 704 [1st Dept 2013]; *Vinik v Lee*, 96 AD3d 522, 522-523 [1st Dept 2012]; *Solomon v Solomon*, 224 AD2d 331 [1st Dept 1996]; *accord McKenna v McKenna*, 121 AD3d 864, 867 [2d Dept 2014]). This Court recently reaffirmed that rule in *Lennox v Weberman*, where it held that "the [motion] court was entitled, in its discretion, to award pendente lite relief in the absence of an express agreement to exclude an award of temporary maintenance" (109 AD3d at 704). Although the majority acknowledges the general principle, it misapplies it by finding an express waiver of temporary maintenance where none was included in the agreement. Thus, while the motion court may have erred in applying Domestic Relations Law former § 236 (B) (5-a) (f) to the parties' prenuptial agreement, it retained its discretion to award defendant temporary maintenance inasmuch as there was no clear waiver of that specific relief.

The majority ignores the significant distinction between maintenance and temporary maintenance, a distinction underlying the rationale of *Tregellas* and its progeny.[1] Indeed, the Domestic Relations Law and our case law treat these two

---

1. The terminology used herein, "maintenance" and "temporary maintenance," reflects that which appears in the version of the Domestic Relations Law that was in effect when the parties executed their agreement and married in March 2010 (Domestic Relations Law former § 236 [B] [6] [a] [absent prenuptial agreement, "the court may order temporary maintenance

types of monetary spousal support as fundamentally different forms of relief. The purpose of maintenance, on the one hand, "is to give the [less-monied] spouse economic independence" (*Cohen v Cohen*, 120 AD3d 1060, 1065 [1st Dept 2014] [internal quotation marks omitted], *lv denied* 24 NY3d 909 [2014]) or "a sufficient period to become self-supporting" (*Sheila C. v Donald C.*, 5 AD3d 123, 124 [1st Dept 2004]) after a marriage has ended. The purpose of temporary maintenance, by contrast, is to provide for the reasonable needs of the less-monied spouse during the pendency of a matrimonial action, allowing him or her to adequately litigate the matter without being forced to capitulate to the demands of the other spouse because of financial pressures (*see Brenner v Brenner*, 52 AD3d 322, 323 [1st Dept 2008]; *see also* 2 Tippins, New York Matrimonial Law and Practice § 17:15 [2015] [a temporary maintenance award is "designed to ensure the economic survival of the dependent spouse . . . until the case is reached for trial and to prevent the economically stronger spouse from starving the dependent party into submission"]). The current Domestic Relations Law also reflects this distinction, by dividing the two types of relief into separate subdivisions, each containing its own calculations and factors to be used in determining the amount of maintenance or temporary maintenance to be awarded (*compare* Domestic Relations Law § 236 [B] [5-a] *with* § 236 [B] [6]).

Affianced parties may opt out of the Domestic Relations Law's provisions of both maintenance and temporary maintenance awards, through the use of prenuptial agreements (Domestic Relations Law § 236 [B] [3]), provided, of course, that such agreements are not "the product of fraud, duress, overreaching resulting in manifest unfairness, or other inequitable conduct" (*Gottlieb v Gottlieb*, 138 AD3d 30, 36 [1st Dept 2016], citing *Christian v Christian*, 42 NY2d 63, 72 [1977]).

However, any waiver, including a waiver of temporary maintenance, must be clear. This standard, articulated most recently in this Court's decision in *Lennox* (109 AD3d at 704), mandates that a purported waiver of temporary maintenance

or maintenance"]; *see also* Alan D. Scheinkman, Supp Practice Commentaries, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law C236B:35 ["Maintenance refers to the spousal support award made after trial; temporary maintenance is pendente lite spousal support"]).The current version of the statute and the version in effect when this action was commenced use the terms "temporary maintenance" and "post-divorce maintenance" (Domestic Relations Law § 236 [B] [5-a], [6]; Domestic Relations Law former § 236 [B] [5-a], [6]). Although "maintenance" and "post-divorce maintenance" can technically be temporary, because they may be awarded for a definite period of time after a divorce, "temporary maintenance" continues to be used in reference to pendente lite maintenance awards.

be "express" in order to effectively deprive the court of its inherent discretion to award such relief. In light of the unique purposes of temporary maintenance discussed above, this is an appropriate and rational requirement. The question, then, is whether the prenuptial agreement here satisfies our standard of clarity; that is, does the provision in which the parties agreed to waive "maintenance" contain an express waiver of temporary maintenance? I say "no."

Black's Law Dictionary defines "express" as "[c]learly and unmistakably communicated; stated with directness and clarity" (Black's Law Dictionary [10th ed 2014], express). Although the parties agreed to "waive any and all claims for spousal support and/or maintenance . . . both now and in the future," their omission of the term "temporary maintenance" or other language referring to pendente lite relief signals their intent to limit the scope of that language to maintenance (and to exclude a waiver of temporary maintenance). Considering the distinct usage of the terms "maintenance" and "temporary maintenance" in former Domestic Relations Law § 236 (B) (which was in effect at the time the parties executed their agreement) and in case law, the parties' use of the term "maintenance" does not "[c]learly and unmistakably communicate[ ]" that the waiver is meant to encompass temporary maintenance.

The use of the phrase "any and all" does not create the clear and unmistakable waiver of temporary maintenance that is needed. The term is imprecise, demonstrates an element of carelessness, and has been criticized by several commentators (*see* Bryan A. Garner, Garner on Language and Writing at 316 [2009] [condemning as fallacious the argument "that superfluities seldom create unclarity"]; David S. Elder, *"Any and All": To Use Or Not To Use?*, 70 Mich Bar J 1070, 1070 [Oct. 1991] ["any" can mean "one, some, or all," and " 'all' can mean any one"]). Yet, the majority's interpretation depends on an inference that the phrase necessarily incorporates pendente lite relief.

Nor does the agreement's temporal reference to "now and in the future" necessarily justify the inference that the parties intended to refer to temporary maintenance; the phrase could simply mean that neither spouse would seek an award for maintenance (i.e., what the current statute terms "[p]ost-divorce maintenance") at any point after the execution of the prenuptial agreement or upon the marriage's termination or dissolution.

The majority also makes much of the fact that the heading above the maintenance waiver mentions "termination of marriage" (emphasis omitted), which the agreement defines as oc-

curring, inter alia, when divorce proceedings are commenced. This, however, does not change the analysis. The result of the parties' failure to expressly waive temporary maintenance, read together with the heading, only signifies that the parties agreed to refrain from raising claims for "maintenance" once these divorce proceedings were commenced. The provision's silence on whether temporary maintenance is also waived makes the definition of "termination of the marriage" immaterial here.[2] In addition, whether the parties stated their capability of being "self supporting" or whether they are in fact so capable is not dispositive, because any inequities in a temporary maintenance award are best resolved by a speedy trial (see e.g. Tregellas, 169 AD2d at 553).

Although no particular catechism is required to waive temporary maintenance claims, parties to a prenuptial agreement should use express language that includes terms such as "temporary maintenance" or "interim spousal support," as distinct from terms like "maintenance" and "post-divorce maintenance," if they wish to waive those claims. Only then will their intent be clear. The majority mischaracterizes my position by claiming that I would require the use of "magic words." I do no such thing. Instead, I recognize, as the majority does, that the existing standard is one of clarity (see Strong v Dubin, 75 AD3d 66, 68 [1st Dept 2010] [parties' intent "must be clearly evidenced by the writing" (internal quotation marks omitted)]), and provide above a nonexhaustive list of terms that may be used to expressly waive temporary maintenance. Rather than mandate a particular phrase, I would simply apply the standard of clarity, consistent with our precedent.

The majority essentially rewrites the parties' agreement by inferring the inclusion of temporary maintenance in a waiver that addresses only claims to "maintenance." Indeed, the final sentence of its opinion—stating that the parties "contracted to waive all claims of spousal support, *both temporary and final*" (emphasis added)—highlights how the majority strains to find express language that is not present in the agreement. Simply put, the parties, represented by able counsel, could have easily drafted their agreement to expressly include a waiver of

---

2. Moreover, I note that although the majority relies on two Second Department cases to support its contention on this point, those cases preceded that Department's more recent decision in *McKenna v McKenna* (121 AD3d 864 [2d Dept 2014]), a case that approvingly cited our decision in *Vinik*, among others, for the proposition that a prenuptial agreement that contains a waiver of maintenance does not automatically result in a waiver of pendente lite relief (see *id.* at 867).

temporary maintenance by employing the language that the majority now imputes to them.

Indeed, practitioners of matrimonial law ought to be aware of the standard of clarity that has been the law in the First Department since at least 1991 (*Tregellas*, 169 AD2d at 553 ["The prenuptial agreement waiving *any right to maintenance* does not bar temporary relief prior to dissolution of the marriage" (emphasis added)]). Significantly, the supplementary practice commentaries accompanying Domestic Relations Law § 236 state that while parties may waive temporary maintenance in a prenuptial agreement, "the agreement must do so explicitly or else temporary maintenance will not be waived. Language waiving maintenance, as distinguished from maintenance and temporary maintenance, will only result in a waiver of maintenance and not of temporary maintenance" (Alan D. Scheinkman, Supp Practice Commentaries, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law C236B:40; 45 NY Jur 2d, Domestic Relations § 188, citing *Lennox* [109 AD3d 703] and *Tregellas* [169 Ad2d 553]).

I agree with the majority that this appeal boils down to a simple matter of contract interpretation, and that a court interpreting a prenuptial agreement should consider " '[p]articular words . . . not as if isolated from the context, but in the light of the obligation as a whole and the intention of the parties as manifested thereby' " (*Strong v Dubin*, 75 AD3d at 69 [alteration added], quoting *Kass v Kass*, 91 NY2d 554, 566 [1998]). Nonetheless, the agreement must also be interpreted in light of our precedent holding that temporary maintenance is not waived absent express and unequivocal language to that effect. That the provision at issue is susceptible to more than one reasonable interpretation demonstrates a lack of clarity with respect to the parties' intent (*see Foot Locker, Inc. v Omni Funding Corp. of Am.*, 78 AD3d 513, 515 [1st Dept 2010]). Altogether, the purported waiver of temporary maintenance in the agreement before us was anything but clear and unmistakable.

I do not dispute our state's "strong public policy favoring individuals ordering and deciding their own interests through contractual arrangements, including prenuptial agreements" (*Matter of Greiff*, 92 NY2d 341, 344 [1998]), but this policy does not direct courts to uphold prenuptial agreements (or other contracts) as unassailable when they employ language that fails to clearly express the intent of the parties. The majority unconvincingly attempts to distinguish our prior cases on their facts—for example, by stating that there is "no indication" that

the parties used expansive language in *Tregellas,* despite our holding that the prenuptial agreement's waiver of *"any right* to maintenance" did not bar a temporary maintenance award in that case (169 AD2d at 553 [emphasis added]). In doing so, it misapplies the broader principle first announced in *Tregellas* and followed by this Court until now (*see e.g. Solomon,* 224 AD2d at 331; *Lennox,* 109 AD3d at 704). The prenuptial agreement in this case failed to expressly waive temporary maintenance; consequently, the motion court was not stripped of its inherent discretion to award that form of pendente lite relief.

Accordingly, the order of Supreme Court should be affirmed in all respects.