Fort v Haar (2022 NY Slip Op 05660)

Fort v Haar

2022 NY Slip Op 05660

Decided on October 11, 2022

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: October 11, 2022

Before: Kern, J.P., Gesmer, Rodriguez, Pitt, JJ. 

Index No. 365391/21 Appeal No. 16377 Case No. 2022-01766 

[*1]Angela Fort, Plaintiff-Respondent,
v
Robert Haar, Defendant-Appellant.

Law Offices of Daniel B. Nottes, PLLC, New York (Daniel B. Nottes of counsel), for appellant.
Cohen Clair Lans Greifer Thorpe & Rottenstreich LLP, New York (Shannon Rogers Simpson of counsel), for respondent.

Order, Supreme Court, New York County (Kathleen Waterman-Marshall, J.), entered April 19, 2022, which, to the extent appealed from as limited by the briefs, granted plaintiff wife's motion for a declaratory judgment to the extent of finding that the phrase "consummation of the anticipated marriage" as used in the parties' prenuptial agreement means "sexual relations between a married couple," denied defendant husband's cross motion for a declaration that the agreement is enforceable, and ordered a limited issue hearing to determine whether the parties had consummated the marriage by having sexual relations, unanimously reversed, on the law, without costs, plaintiff's motion denied, defendant's cross motion granted and it is declared that the prenuptial agreement is effective and enforceable as of the date of the parties' marriage.
Sometime after meeting, the parties began cohabiting, signed a cohabitation agreement, and later agreed to marry. In August 2014, the parties entered into a prenuptial agreement, and on February 14, 2015, they were married before a rabbi. The recitals of the prenuptial agreement stated that the cohabitation agreement would be deemed void upon the parties' marriage. The prenuptial agreement stated that the parties' general intention was to fix their rights "in advance" so that, "in the event of an end to the marriage by annulment, divorce or death or in the event of a legal separation," they would "avoid unnecessary litigation and intrusion into their lives."
The prenuptial agreement contains a section entitled "MARRIAGE -A CONDITION PRECEDENT AND EFFECTIVE DATE," which provides, "consummation of the anticipated marriage of [the parties] is a condition precedent to the enforceability of this Agreement. If [the parties] do not marry, this Agreement shall have no effect. . . . This Agreement is made in consideration of, and is conditioned upon, [the parties] entering into a valid ceremonial marriage with each other, and it shall become effective as of the date of that marriage." The agreement also provided that the husband was to provide the wife with a car and a sum of money if they married. It is undisputed that he did so, and that she accepted the car and money. In 2020, the parties executed a modification to the agreement which did not change or affect the referenced language, and instead stated that "[a]ll provisions of the Prenuptial Agreement that are not inconsistent with the terms of this Modification Agreement shall continue in full force and effect."
After the wife commenced this divorce action, she sought a declaration that the agreement was not enforceable, arguing that a condition precedent was the parties' "consummating the anticipated marriage," which she asserted was understood to mean having engaged in marital sexual relations. The husband opposed and sought a declaration that the agreement was enforceable as of the date of the marriage. He also disputed the wife's factual assertions that the parties [*2]had not had sexual relations since the date of the marriage.
We conclude that, as used in this prenuptial agreement, the phrase clearly and unambiguously refers to the marriage ceremony anticipated by the parties when they entered into the agreement. "[W]hen interpreting a prenuptial agreement the court should arrive at a construction that will give fair meaning to all of the language employed by the parties to reach a practical interpretation of the expressions of the parties so that their reasonable expectations will be realized" (Strong v Dubin, 75 AD3d 66, 69 [1st Dept 2010] [internal quotation marks omitted]). A written agreement should be read as a whole to give effect to its general purpose (Matter of Westmoreland Coal Co. v Entech, Inc., 100 NY2d 352, 358 [2003]), and a court generally should not construe contractual language "in such a way as would distort the contract's apparent meaning" (Cohen-Davidson v Davidson, 291 AD2d 474, 475 [2d Dept 2002]). "Where the terms of a contract are clear and unambiguous, the intent of the parties must be found within the four corners of the contract, giving a practical interpretation to the language employed and reading the contract as a whole" (Ellington v EMI Music, Inc., 24 NY3d 239, 244 [2014]).
While the word "consummation" connotes sexual relations in certain contexts, such as annulment proceedings, that is not the only meaning of the word, which may simply mean achieve or fulfill (see Black's Law Dictionary [11th ed 2019]). The plain meaning of "consummation," in the context of the section titled "Marriage — a Condition Precedent and Effective Date" and defining the effective date of agreement as the date of the parties' marriage, is consummation or fulfillment of the parties' intention to enter into a valid "marriage." Reading the contract as a whole, this interpretation of the section effectuates the parties' expressed intention to fix their respective rights accruing upon marriage and to avoid unnecessary and intrusive litigation in the event of divorce, and sets an ascertainable date for determining the effectiveness and enforceability of the prenuptial agreement.
In contrast, accepting the wife's position would render the parties' respective rights uncertain and require the court to conduct a highly intrusive hearing into the parties' intimate relations, which is both contrary to the parties' stated intention and impractical. The wife does not explain how an agreement can be "effective" as of the date of the marriage, but not be "enforceable" unless and until an uncertain future event, i.e., sexual consummation of the marriage, has occurred. This interpretation is also consistent with common usage in the context of prenuptial agreements, as numerous form prenuptial agreements utilize the phrase "consummation of the proposed marriage" to mean the marriage ceremony (see 5 Am Jur Legal Forms 2d § 61:16, Section 7; § 61.6 section 6; Williston on Contracts Forms § 62F:253, 62F:243, 62F:314 [[*3]4th ed 1990]), without any regard to sexual consummation of the marriage.
Furthermore, the wife's acceptance of benefits under the terms of the prenuptial agreement forecloses her from questioning its enforceability (see Markovitz v Markovitz, 29 AD3d 460, 461 [1st Dept 2006]). The parties' conduct in executing the modification agreement further underscores that they believed it was in force and effect (Federal Ins. Co. v Americas Ins. Co., 258 AD2d 39, 44 [1st Dept 1999]).
We have considered the wife's remaining arguments and find them unavailing. 
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: October 11, 2022