[818 NYS2d 571]

Lynda G. Kessler, Respondent, v John A. Kessler, Appellant.

Second Department, July 11, 2006

APPEARANCES OF COUNSEL

*Banks Shapiro Gettinger & Waldinger, LLP*, Mount Kisco (*Mona D. Shapiro* of counsel), for appellant.

*Kramer Kozek, LLP*, White Plains (*Barry Abbott* of counsel), for respondent.

## OPINION OF THE COURT

RITTER, J.

The monied spouse in this action, inter alia, for a divorce, seeks to overturn the Supreme Court's determination that it would be unconscionable to enforce the wife's waiver of her right to seek an award of an attorney's fee.

On June 4, 1996, four days before their marriage, the parties executed a prenuptial agreement making limited provision for the wife during the marriage and leaving her with little or nothing should the parties divorce. In March 2002 the wife commenced this action, inter alia, for a divorce and ancillary relief. The wife sought, among other things, rescission or reformation of the prenuptial agreement. Further, she alleged, the agreement was breached by the husband. The husband sought, inter alia, a determination that the prenuptial agreement was valid and enforceable, and entry of a judgment as to economic issues in accordance with the same. The parties agreed that the Supreme Court should determine the enforceability of the prenuptial agreement first. Thus, in October 2003, after the issue of custody of the parties' two children was settled on the eve of trial, the Supreme Court held a hearing concerning the validity and enforceability of the prenuptial agreement. The court also considered whether the attorney's fee provision of the agreement should be held unenforceable as against public policy. The Supreme Court rejected the wife's arguments that the agreement was void because she entered it under duress or that it was unconscionable as a whole. Further, the court found that the wife failed to prove that the husband breached the agreement by failing to pay his share of the joint household account. However, the court held that the portion of the agreement waiving the right to seek an award of an attorney's fee was unconscionable and unenforceable in light of the strong public policy embodied in Domestic Relations Law § 237 (a). Because the wife

has not appealed, the only issue presented is the enforceability of the waiver of her right to seek an award of an attorney's fee. We affirm the Supreme Court's determination that the wife's waiver of her right to seek an award of an attorney's fee is unenforceable.

Paragraph 2 of the parties' prenuptial agreement defined the separate property of each party. Schedules appended to the agreement list each parties' assets. The wife's assets were valued at $135,596. The husband's assets were valued at almost $4,000,000, and consisted of bank and brokerage accounts, real property (including the marital home), and stock in his closely-held company, Indoor Courts of America (hereinafter ICA). The values assigned must be accepted as reported because each party waived the right to any further disclosure concerning the other's assets. Separate property was expansively defined to include all proceeds from the sale, exchange, or other disposition of separate property; any replacement property acquired from the proceeds of the same; and all property purchased during the marriage with one party's sole and separate funds and owned either by that party alone or by that party and another party who is not a spouse.

Paragraph 5 of the agreement established what was to occur in the event the marriage was terminated other than by death (i.e., by divorce). Under paragraph 5, each party retained his or her separate property as defined in paragraph 2 in the same manner and to the same extent as if the marriage had not taken place. Only property accumulated during the course of the marriage, excluding the separate property as defined, was available for division between the parties. If there were no children, the husband was entitled to immediate exclusive possession of the marital home. If, as is the case, children were born of the marriage and were still minors at the time of the divorce, the agreement provided that the matter of occupancy of the marital home was to be determined by the court. Paragraph 5 also contained the language at issue on this appeal: the blanket declaration that "each party shall have no right or claim against the other for support, alimony, attorney fees or costs."

In the event of death, paragraph 4 provided that each party was entitled to dispose of his or her separate property by will. Should the husband predecease the wife, he agreed to bequeath her the sum of $100,000 in lieu of other bequests. During the course of the marriage, paragraph 6 provided for a joint household account into which each party was to make regular

and equal payments in an unspecified amount. The parties agreed to use this account to pay, inter alia, "normal maintenance, repairs and upkeep" on the marital home.

Preliminarily, we note, it is not disputed that the prenuptial agreement does not address the issue of child custody or child support for the parties' two minor children. Indeed, at the beginning of the hearing, the parties expressly stipulated that the word "support" as used in paragraph 5, was not intended and should not be interpreted to mean child support. Consequently, an award of an attorney's fee relating to child custody and child support issues is not controlled by the prenuptial agreement, but rather by Domestic Relations Law § 237 (see Alvares-Correa v Alvares-Correa, 285 AD2d 123 [2001]). The waiver of the right to seek an award of an attorney's fee contained in paragraph 5 of the agreement is limited to the subject matter addressed by that paragraph, namely, issues of equitable distribution. The significance and potential complexity of the issues remaining concerning the same is made manifest by the record. At the hearing, counsel for the wife expressly noted that, regardless of whether or not the prenuptial agreement was upheld, there were issues concerning "what property is in the agreement and what property is not." Further, he noted, there was property acquired since the agreement, and "there's money that goes in and there's money that goes out." We note that the parties' joint tax return for 2001, which, in the main, concerns the husband's assets, spans 78 pages of the record. In sum, the enforcement of the waiver of an attorney's fee contained in paragraph 5 could have a significant impact on the litigation.

The enforceability of a provision of a prenuptial agreement waiving the right to seek an award of an attorney's fee presents a clash of two competing public policies—that in favor of resolving marital issues by agreement and that in favor of assuring that matrimonial matters are determined by parties operating on a level playing field.

In general, New York has a "strong public policy favoring individuals ordering and deciding their own interests through contractual arrangements" (Matter of Greiff, 92 NY2d 341, 344 [1998]; see Bloomfield v Bloomfield, 97 NY2d 188 [2001]). However, this right is not and has never been without limitation. For example, parties may not enter into a contract in violation of the federal or state constitution, a statute, an ordinance, or a regulation, and contracts may be set aside or held void as unconscionable or in violation of public policy (see e.g. Public

*Serv. Mut. Ins. Co. v Goldfarb*, 53 NY2d 392 [1981]; *Sternaman v Metropolitan Life Ins. Co.*, 170 NY 13 [1902]; *Ross v Clyde Beatty-Cole Bros. Circus*, 26 AD3d 321 [2006]; *Christ Gatzonis Elec. Contr. v New York City School Constr. Auth.*, 297 AD2d 272 [2002]).

The right to enter into a contractual arrangement as to matrimonial matters is expressly authorized by Domestic Relations Law § 236 (B) (3), which provides: "An agreement by the parties, made before or during the marriage, shall be valid and enforceable in a matrimonial action if such agreement is in writing, subscribed by the parties, and acknowledged or proven in the manner required to entitle a deed to be recorded." This provision "authorizes spouses or prospective spouses to contract out of the elaborate statutory system and provide for matters such as inheritance, distribution or division of property, spousal support, and child custody and care in the event that the marriage ends" (*Matisoff v Dobi*, 90 NY2d 127, 132 [1997]; *see Christian v Christian*, 42 NY2d 63 [1977]; *Matter of Davis*, 20 NY2d 70 [1967]; *Paruch v Paruch*, 140 AD2d 418, 420 [1988]). However, the State is deeply concerned with marriage and takes a supervisory role in matrimonial proceedings. In a related context, the Court of Appeals stated, "courts have thrown their cloak of protection about separation agreements and made it their business, when confronted, to see to it that they are arrived at fairly and equitably, in a manner so as to be free from the taint of fraud and duress, and to set aside or refuse to enforce those born of and subsisting in inequity" (*Christian v Christian, supra* at 72). Indeed, in numerous contexts, agreements addressing matrimonial issues have been subjected to limitations and scrutiny beyond that afforded contracts in general. For example, an agreement concerning the amount and duration of spousal maintenance must be fair and reasonable at the time it is made, and not unconscionable at the time of entry of final judgment in the divorce action (*see* Domestic Relations Law § 236 [B] [3]; *Deckoff v Deckoff*, 284 AD2d 426 [2001]). Further, no spouse may relieve the other of the requirement of support to the extent that the spouse may become a public charge (*see Bloomfield v Bloomfield, supra*). An agreement as to child support must set forth the amount of child support that would be owed under the relevant guidelines and, if the amount agreed to deviates from the same, an explanation why (*see* Domestic Relations Law § 240 [1-b] [h]). Moreover, even if the agreement complies with the statutory requirements, the courts

"retain discretion with respect to child support" (Domestic Relations Law § 240 [1-b] [h]; *see Matter of Gravlin v Ruppert*, 98 NY2d 1, 5 [2002]; *Pecora v Cerillo*, 207 AD2d 215, 217 [1995]). Similarly, a prenuptial agreement as to child custody is not binding on the court (*see Friederwitzer v Friederwitzer*, 55 NY2d 89 [1982]; *Fanelli v Fanelli*, 215 AD2d 718 [1995]). Nor is an agreement concerning the physical location of a child subject to a joint or shared custody arrangement (*see Matter of Tropea v Tropea*, 87 NY2d 727 [1996]). In short, the statutory scheme may trump an agreement if there is an inconsistency.

The Domestic Relations Law does not expressly address the right to enter into an agreement concerning an attorney's fee in a matrimonial action. However, Domestic Relations Law § 237 (a) authorizes the court to "direct either spouse . . . to pay such sum or sums of money directly to the attorney of the other spouse to enable that spouse to carry on or defend the action or proceeding as, in the court's discretion, justice requires, having regard to the circumstances of the case and of the respective parties" (*see DeCabrera v Cabrera-Rosete*, 70 NY2d 879 [1987]). This represents a statutory exception to the general rule that an attorney's fee is an incident of litigation to be borne by the respective parties (*see Matter of A.G. Ship Maintenance Corp. v Lezak*, 69 NY2d 1, 5 [1986]). Further, it is more than a mere permissive legislative grant of authority to award an attorney's fee.

> "[Domestic Relations Law § 237], which has deep statutory roots, is designed to redress the economic disparity between the monied spouse and the non-monied spouse. Recognizing that the financial strength of matrimonial litigants is often unequal—working most typically against the wife—the Legislature invested Trial Judges with the discretion to make the more affluent spouse pay for legal expenses of the needier one. The courts are to see to it that the matrimonial scales of justice are not unbalanced by the weight of the wealthier litigant's wallet." (*O'Shea v O'Shea*, 93 NY2d 187, 190 [1999].)

Thus, Domestic Relations Law § 237 embodies a public policy determination by the Legislature that matrimonial matters are best resolved by parties operating on a level playing field (*cf. DelDuca v DelDuca*, 304 AD2d 610 [2003]).

However, not every agreement waiving the right to seek an award of an attorney's fee should be set aside. Rather, careful

and individualized scrutiny is called for. The determination as to whether or not a provision waiving the right to seek an award of an attorney's fee is enforceable must be made on a case-by-case basis after weighing the competing public policy interests in light of all relevant facts and circumstances both at the time the agreement was entered and at the time it is to be enforced. If, upon such an inquiry, the court determines that enforcement of the provision would preclude the nonmonied spouse from carrying on or defending a matrimonial action or proceeding as justice requires, the provision may be held unenforceable. Also relevant to such a determination is the conduct of the parties over the course of the matrimonial action. Such a determination is frequently best made at the conclusion of the action. However, because an attorney's fee is authorized when needed to carry on or defend an action, it may be necessary to make such a determination at an earlier point in the litigation. Here, although the Supreme Court contemplated the need for an interim award of an attorney's fee, apparently, an award was not made, leaving the issue to be determined at trial. Thus, the issue of the amount, if any, of such an award is not before this Court on appeal. However, to the extent that such an award would otherwise be subject to the waiver contained in the prenuptial agreement, the Supreme Court, after careful and individualized scrutiny of the need for the same, may award the wife an attorney's fee as justice requires to enable her to carry on or defend issues of equitable distribution.

There is a great disparity between the relative financial positions of the parties in this action both at the time the prenuptial agreement was executed and at the time this action was commenced. The net value of the wife's separate property as set forth in the schedule appended to the prenuptial agreement was $135,596, while the net value of the husband's separate property was almost $4,000,000. Further, as also noted, the husband's wealth was, in the main, held in financial accounts, real property, and stock. This gives particular significance to the provision of the prenuptial agreement which includes among separate property all proceeds from the sale, exchange, or other disposition of separate property, and any replacement property acquired from the proceeds of the same. Indeed, such a provision, in conjunction with the provision precluding the award of spousal maintenance, regardless of the length of the marriage, meant that the prenuptial agreement provided the wife with little more than a limited right to occupy the marital home

(which remained the husband's separate property) during the course of the marriage. Further, although less developed on the record, the disparity between the parties' relative financial positions has increased. The wife's 2002 statement of net worth shows total assets of $160,034 and a net worth of $135,234; essentially the same as when she entered the marriage. The husband's 2002 statement of net worth shows his total assets have grown to $5,626,224.15. Further, although the husband claims a negative net worth of $1,376,138.53, this figure appears open to challenge. For example, $3,700,000 of claimed debt is for contingent liabilities on the husband's personal guarantees of the corporate debt of his company, ICA. In his 2002 net worth statement, the husband values ICA at $416,650. However, in the list of property appended to the prenuptial agreement, the husband valued his stock in ICA at the sum of over $2,000,000. Further, in his 2002 net worth statement, the husband appears to significantly undervalue the marital home at $700,000. The home, which is very large and sits on four acres of property in Westchester County, was purchased in 1991 (more than 10 years earlier) for $420,000, and has since been improved with, inter alia, a pool and a tennis court. In short, there remains a great disparity between the relative financial wealth of the parties.

Despite this great disparity, the prenuptial agreement reflects no consideration given to the specific facts and circumstances of the parties as they relate to an award of an attorney's fee. Rather, although the wife came into the marriage with minimal assets compared to the husband, and the prenuptial agreement helped assure that this imbalance remained, the agreement provides for a blanket waiver of the right to seek an award of an attorney's fee (among other things), regardless of the length of the marriage or what occurred therein. Thus, the agreement does not provide for any consideration to be given at the time of the matrimonial action to the various issues relevant to an award of an attorney's fee, including, inter alia, the quantity and complexity of the issues to be litigated, and the relative means of the parties to do so. Indeed, by the time of the hearing, both parties had already incurred substantial attorney's fees. The husband testified that he had paid the sum of $75,000 in attorney's fees and owed the sum of approximately $75,000 more. The wife testified that she incurred the sum of approximately $165,000 in attorney's and related expert fees. Moreover, although it cannot be determined on the record pre-

sented how much of this amount was incurred on matters related to child support and child custody, which, as discussed, is not controlled by the prenuptial agreement, and/or how much was incurred by the wife pursuant to her unsuccessful effort to rescind or reform the prenuptial agreement, which is not compensable pursuant to Domestic Relations Law § 237 (*see Schapiro v Schapiro*, 204 AD2d 87, 88 [1994]; *Lamborn v Lamborn*, 56 AD2d 623 [1977]; *see also Anonymous v Anonymous*, 258 AD2d 547 [1999]), the amounts alone are telling and suggest that, in the absence of at least a determination as to whether an award of an attorney's fee is warranted pursuant to Domestic Relations Law § 237 as they concern matters arising under paragraph 5 of the agreement, the matrimonial scales will be skewed in favor of the husband's heavier wallet. The wealthier spouse should not be permitted, by the same agreement, to both opt out of the statutory scheme concerning an award of an attorney's fee and prevent an effective assessment of how important an award of an attorney's fee may be. Moreover, whether or not either party here has improperly prolonged the litigation, or created needless litigation, etc., should also be considered by the court in determining the amount, if any, of an award of an attorney's fee to the wife.

In sum, on the record presented, weighing the competing public policy interests in light of all of the relevant facts and circumstances as developed on the record, the Supreme Court did not err in determining that the provision of the parties' prenuptial agreement waiving the right to seek an award of an attorney's fee was unenforceable. Thus, we affirm the order insofar as appealed from.

MILLER, J.P., GOLDSTEIN and DILLON, JJ., concur.

Ordered that the order is affirmed insofar as appealed from, on the law, with costs.