■ Leslie Elliot Strong, Respondent, v Madeline Dubin, Appellant. [851 NYS2d 428]—

Order, Supreme Court, New York County (Laura E. Drager, J.), entered December 20, 2006, which, to the extent appealed from, confirmed a Referee's report finding the parties' prenuptial agreement valid and enforceable, unanimously affirmed, without costs.

A strong public policy favors individuals who order and decide their own interests through contractual arrangements, including prenuptial agreements (*Matter of Greiff*, 92 NY2d 341, 344 [1998]). Indeed, a duly executed prenuptial agreement, which is deliberately prepared and executed to reflect the intention of the parties, is accorded the same presumption of legality as any other contract (*Bloomfield v Bloomfield*, 97 NY2d 188, 193 [2001]). Defendant contends that she merely relied on plaintiff when executing the agreement, but there is no evidence of undue influence. Nor are there exceptional circumstances that would warrant a shifting of the burden of proof.

The fact that plaintiff's counsel recommended an attorney for defendant after she said she did not have one, and that this attorney had once worked in plaintiff's counsel's office as an intern during college, neither evinces undue influence nor demonstrates a conflict of interest on the part of defendant's counsel. Defendant was not required to use the referred attorney, nor was she pressured to do so. She admittedly had other legal resources to whom she could have turned, if only for an independent referral. Moreover, it is uncontested that defendant asked counsel no questions about the agreement. When counsel told defendant that the agreement appeared one-sided,

she purportedly responded: "It's okay. I just want to get married." We find no reason to disturb the Referee's and the court's determination to credit counsel's testimony. Defendant admitted that she read the agreement before signing it, and while she did not understand the "legalese" (i.e., statutory references), she did understand that the parties' properties would remain separate. When asked if she understood the waiver of maintenance prior to signing the agreement, she answered, "I'm sure I did."

A failure to disclose financial matters, by itself, is not sufficient to vitiate a prenuptial agreement (*see Panossian v Panossian*, 172 AD2d 811 [1991]). There was no attempt by plaintiff to conceal or misrepresent the nature or extent of his assets. In fact, defendant was personally acquainted with these assets. We also find nothing unconscionable about the agreement. Concur— Tom, J.P., Saxe, Gonzalez, Buckley and Catterson, JJ.