[900 NE2d 977, 872 NYS2d 426]

Claire Van Kipnis, Appellant, v Gregory Van Kipnis, Respondent.

Argued November 20, 2008; decided December 18, 2008

## POINTS OF COUNSEL

*Berkman Bottger & Rodd, LLP,* New York City (*Walter F. Bottger, Elizabeth A. Fox* and *Amelia A. Nickles* of counsel), for appellant. I. An agreement to hold property separately should not, without more, effect a waiver of equitable distribution. (*Mercier v Mercier,* 103 Misc 2d 1029; *Torres v $36,256.80 U.S. Currency,* 827 F Supp 197; *Lauro v Bradley,* 266 AD2d 911; *McLaren v McLaren,* 99 Misc 2d 797; *Tucker v Tucker,* 55 NY2d 378; *Valladares v Valladares,* 80 AD2d 244, 55 NY2d 388; *DeLuca v De-Luca,* 97 NY2d 139; *DeJesus v DeJesus,* 90 NY2d 643; *Price v Price,* 69 NY2d 8; *O'Brien v O'Brien,* 66 NY2d 576.) II. All of the wife's counsel fees should be paid by the husband. (*Schapiro v Schapiro,* 204 AD2d 87; *Lucci v Lucci,* 227 AD2d 387; *Lamborn v Lamborn,* 56 AD2d 623; *O'Shea v O'Shea,* 93 NY2d 187.) III. The maintenance award fails as against the statutory standards, the evidence and equity. (*Comstock v Comstock,* 1 AD3d 307; *Spencer v Spencer,* 230 AD2d 645; *Patron v Patron,* 40 NY2d 582; *Holterman v Holterman,* 3 NY3d 1; *Matter of Cassano v Cassano,* 85 NY2d 649.)

*Gartner + Bloom, PC,* New York City (*Stuart F. Gartner* and *Arthur P. Xanthos* of counsel), for respondent. I. The prenuptial agreement is a valid and enforceable agreement, and by its terms applicable upon divorce. (*Roos v Roos,* 206 AD2d 293; *Matter of Weeks,* 294 NY 516; *Lemye v Sirker,* 226 App Div 159;

*Matter of Majot,* 199 NY 29; *Bonati v Welsch,* 24 NY 157; *Van Cortlandt (de Graffenried) v de Graffenried,* 147 App Div 825; *De Ganay v De Ganay,* 269 AD2d 157; *Bourbon v Bourbon,* 300 AD2d 269; *Strebler v Wolf,* 152 Misc 859; *Housset v Housset,* 200 AD2d 508.) II. The equitable distribution, legal fees and maintenance ordered by the trial court were more than fair to appellant and in accordance with the law. (*Ford Motor Credit Co. v Colonial Funding Corp.,* 215 AD2d 435; *Jones Lang Wootton USA v LeBoeuf, Lamb, Greene & MacRae,* 243 AD2d 168, 92 NY2d 962; *D & L Holdings v Goldman Co.,* 287 AD2d 65, 97 NY2d 611; *Environmental Concern v Larchwood Constr. Corp.,* 101 AD2d 591; *Matter of Bianchi v New York State Div. of Hous. & Community Renewal,* 5 AD3d 303; *Schapiro v Schapiro,* 204 AD2d 87; *Wyser-Pratte v Wyser-Pratte,* 160 AD2d 290; *Lamborn v Lamborn,* 56 AD2d 623; *Anonymous v Anonymous,* 258 AD2d 547; *Kenyon v Kenyon,* 155 AD2d 825.)

### OPINION OF THE COURT

GRAFFEO, J.

The principal issue in this matrimonial case is whether the parties' foreign prenuptial agreement precludes the equitable distribution of certain property under New York law. Like the courts below, we conclude that it does.

Plaintiff Claire Van Kipnis (wife) and defendant Gregory Van Kipnis (husband) were married in Paris, France in 1965. At the time of the parties' marriage, wife was a Canadian citizen from Quebec studying at the Sorbonne and husband was a citizen of the United States, having recently completed college. Prior to the marriage ceremony, wife had a "Contrat de Mariage" drafted under the French Civil Code and arranged for legal counsel to explain the terms of the prenuptial agreement in English to husband. The agreement was executed by the parties on September 30, 1965.

Under the provisions of the Contrat de Mariage, the parties opted out of the community property scheme (the governing custom in France) in favor of a separation of estates regime. In relevant part, the agreement provides:

> "The future spouses declare that they are adopting the marital property system of separation of estates, as established by the French Civil Code.

> "Consequently, each spouse shall retain ownership and possession of the chattels and real property that

he/she may own at this time or may come to own subsequently by any means whatsoever.

"They shall not be liable for each other's debts established before or during the marriage or encumbering the inheritances and gifts that they receive.

"The wife shall have all the rights and powers over her assets accorded by law to women married under the separate-estates system without any restriction."

After the wedding, the parties moved to New York where they resided during their 38-year marriage. Husband was employed in finance while wife worked as a professor at Cooper Union and later as a cultural counselor for the Quebec government. Wife was also the primary caretaker of the parties' two children, now emancipated. Throughout their marriage, the parties maintained separate accounts and assets, with the exception of the joint ownership of their two homes—a $625,000 house in Massachusetts and a cooperative apartment in Manhattan valued at $1,825,000.

In 2002, wife commenced this action for divorce and ancillary relief.[1] Following discovery, but before trial, Supreme Court granted husband's motion to amend his answer to assert the 1965 prenuptial agreement as a defense to wife's equitable distribution claims. After the Appellate Division affirmed the order permitting the amendment (8 AD3d 94 [2004]), Supreme Court appointed a Special Referee to conduct a hearing on the issues of equitable distribution, maintenance and counsel fees.

The Referee determined that the French contract provided for the separate ownership of assets held in the parties' respective names during the course of the marriage. As a result, husband retained his liquid assets of approximately $7 million and wife kept her assets ranging from $700,000 to $800,000. But as to the jointly held properties, which the parties agreed were subject to equitable distribution, the Referee recommended that wife be awarded the Manhattan apartment, together with $75,000 in reimbursement for repairs, and husband be awarded the country home in Massachusetts. After reviewing the statutory factors related to maintenance, the Referee proposed that wife receive $7,500 per month in maintenance until either

---

1. Husband had also commenced an action for divorce in Massachusetts that resulted in an ex parte, no-fault divorce. The Massachusetts court referred the parties' economic issues to wife's pending proceeding in New York.

husband or wife dies or wife remarries. Finally, the Referee concluded that legal fees expended in connection with wife's challenge to the prenuptial agreement were not compensable under Domestic Relations Law § 237. After deducting that portion of wife's claim for counsel fees attributable to contesting the agreement, the Referee awarded wife $92,779.57 in attorneys' fees. Supreme Court confirmed the Referee's report. The Appellate Division, with one Justice dissenting, affirmed (43 AD3d 71 [2007]), and we granted wife leave to appeal (10 NY3d 705 [2008]).

Wife contends that all of the parties' property should be subject to equitable distribution under Domestic Relations Law § 236 (B) (5). She asserts that the 1965 agreement, drafted and executed in France, was intended to apply to property ownership during the course of the marriage, but not to the distribution of property in the event of a divorce. In her view, the primary purpose of the agreement was for each spouse to avoid liability for the other's debts. Relatedly, wife posits that a prenuptial agreement cannot waive a party's right to equitable distribution under the Domestic Relations Law absent an explicit waiver. Husband counters that the agreement unambiguously provides that the parties shall retain their property separately throughout their marriage and, as a result, all property not held in joint names must be treated as separate property and excluded from equitable distribution.

It is well settled that duly executed prenuptial agreements are generally valid and enforceable given the "strong public policy favoring individuals ordering and deciding their own interests through contractual arrangements" (*Bloomfield v Bloomfield*, 97 NY2d 188, 193 [2001] [internal quotation marks and citation omitted]). As with all contracts, prenuptial agreements are construed in accord with the parties' intent, which is generally gleaned from what is expressed in their writing. Consequently, "a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms" (*Greenfield v Philles Records*, 98 NY2d 562, 569 [2002]). Extrinsic evidence of the parties' intent may not be considered unless a court first finds that the agreement is ambiguous.

Prenuptial agreements addressing the ownership, division or distribution of property must be read in conjunction with Domestic Relations Law § 236 (B), enacted in 1980 as part of New York's Equitable Distribution Law. The statute provides that,

unless the parties agree otherwise in a validly executed prenuptial agreement pursuant to section 236 (B) (3), upon dissolution of the marriage marital property must be distributed equitably between the parties while separate property shall remain separate (*see* Domestic Relations Law § 236 [B] [5] [a]-[c]).[2] As relevant here, separate property is defined to include "property described as separate property by written agreement of the parties pursuant to subdivision three of this part" (Domestic Relations Law § 236 [B] [1] [d] [4]). Under the statute, a prenuptial agreement may include a "provision for the ownership, division or distribution of separate and marital property" and is valid and enforceable if it "is in writing, subscribed by the parties, and acknowledged or proven in the manner required to entitle a deed to be recorded" (Domestic Relations Law § 236 [B] [3]; *see also Matisoff v Dobi*, 90 NY2d 127, 130 [1997]).[3]

The Domestic Relations Law therefore contemplates two basic types of prenuptial agreement that affect the equitable distribution of property. First, parties may expressly waive or opt out of the statutory scheme governing equitable distribution (*see e.g. Bloomfield*, 97 NY2d at 193; *Housset v Housset*, 200 AD2d 508, 509 [1st Dept 1994]). Second, parties may specifically designate as separate property assets that would ordinarily be defined as marital property subject to equitable distribution under Domestic Relations Law § 236 (B) (5). Such property would then remain separate property upon dissolution of the marriage. In either case, the intent of the parties "must be clearly evidenced by the writing" (*Tietjen v Tietjen*, 48 AD3d 789, 791 [2d Dept 2008]).

■ Here, the parties' written agreement, adopting a "separation of estates" scheme, falls within the second prenuptial agreement category. The agreement specifies that separate ownership of assets applies not only to the property that each party had

---

2. Marital property is defined as
"all property acquired by either or both spouses during the marriage and before the execution of a separation agreement or the commencement of a matrimonial action, regardless of the form in which title is held, *except as otherwise provided in agreement pursuant to subdivision three of this part*" (Domestic Relations Law § 236 [B] [1] [c] [emphasis added]).

3. Noncompliance with the execution formalities outlined in Domestic Relations Law § 236 (B) (3) does not invalidate prenuptial agreements that predate the effective date of that subdivision (*see Bloomfield v Bloomfield*, 97 NY2d 188, 194 [2001]). Here, wife concedes that the prenuptial agreement was validly executed.

acquired at the time of the marriage, but also to property that they "may come to own subsequently by any means whatsoever." It further assures that "wife shall have all the rights and powers over her assets accorded by law to women married under the separate-estates system without any restriction." Contrary to wife's argument, the Domestic Relations Law contains no categorical requirement that a prenuptial agreement must set forth an express waiver of equitable distribution. Rather, when read together, Domestic Relations Law § 236 (B) (1) (d) (4) and (5) (b) provide that assets designated as separate property by a prenuptial agreement will remain separate after dissolution of the marriage. Such is the case here. Indeed, as recognized by the Appellate Division, with the exception of two jointly owned residences (which were distributed as marital property), the parties did not commingle their separately owned assets throughout their 38-year marriage. We therefore agree with the courts below that the agreement constitutes an unambiguous prenuptial contract that precludes equitable distribution of the parties' separate property, rendering it unnecessary to resort to extrinsic evidence.

Turning to the issue of maintenance, which was not addressed by the prenuptial agreement, wife contends that the courts below improperly weighed the factors listed in Domestic Relations Law § 236 (B) (6) (a), resulting in an inadequate monthly maintenance award. The record here, however, supports the affirmed findings of the courts below and we perceive no abuse of discretion in their calculation.

Finally, wife submits that the courts below erred in precluding her recovery of legal fees under Domestic Relations Law § 237 for services provided in opposing her husband's affirmative defense predicated on the prenuptial agreement. Neither party here seeks to set aside the prenuptial agreement; instead, their dispute centers on whether the terms of the contract apply to the ownership of assets upon divorce. In this respect, her request is similar to the fee application in *Ventimiglia v Ventimiglia* (36 AD3d 899 [2d Dept 2007]), where attorneys' fees were awarded to a party who contested her spouse's affirmative defense based on an antenuptial agreement. Remittal to Supreme Court for reconsideration is therefore necessary because this portion of wife's fee application should not have been excluded as a matter of law.

Accordingly, the order of the Appellate Division should be modified, without costs, by remitting to Supreme Court for fur-

ther proceedings in accordance with this opinion and, as so modified, affirmed.

Chief Judge KAYE and Judges CIPARICK, READ, SMITH, PIGOTT and JONES concur.

Order modified, etc.