■ VICTOR BAROCAS, Respondent, v DEBORAH BAROCAS, Appellant. [942 NYS2d 491]—

Order, Supreme Court, New York County (Ellen Gesmer, J.), entered May 4, 2011, which denied defendant wife's motion for summary judgment declaring void the parties' November 1, 1995 prenuptial agreement, affirmed, without costs.

We reject defendant's contention that the property division provisions of the prenuptial agreement are unconscionable. Defendant failed to establish that her execution of the agreement was the result of inequitable conduct on plaintiff's part. Rather, the parties fully disclosed their respective assets and net worth, and the agreement was reviewed by independent counsel, who defendant admits had told her that the agreement was "completely unfair" and advised against signing it (*Strong v Dubin*, 48 AD3d 232 [2008]; *Colyer v Colyer*, 26 AD3d 303, 304 [2006]; *Cron v Cron*, 8 AD3d 186 [2004], *lv dismissed* 7 NY3d 864 [2006], *lv denied* 10 NY3d 703 [2008]). The fact that plaintiff's attorney recommended defendant's counsel, and that plaintiff paid her counsel's fees, is insufficient to demonstrate duress or overreaching (*see Smith v Walsh-Smith*, 66 AD3d 534 [2009], *lv denied* 14 NY3d 704 [2010]). Defendant's claim that she believed that there would be no wedding if she did not sign the agreement, that the wedding was only two weeks away and that wedding plans had been made, is insufficient to demonstrate duress (*see Colello v Colello*, 9 AD3d 855, 858 [2004]). Although application of the provisions would result in plaintiff retaining essentially all the property, courts will not set aside an agreement on the ground of unconscionability where inequitable conduct was lacking and simply because, in retrospect, the agreement proves to be improvident or one-sided (*see Christian v Christian*, 42 NY2d 63, 72 [1977]; *McCaughey v McCaughey*, 205 AD2d 330, 331 [1994]). The circumstances surrounding the execution of the agreement disclose no issue of fact as to whether there was overreaching. We therefore adhere to the general rule that " '[i]f the execution of the agreement . . . be fair, no further inquiry will be made' " (*Levine v Levine*, 56 NY2d 42, 47 [1982], quoting *Christian*, 42 NY2d at 73).

Moreover, "[d]uly executed prenuptial agreements are accorded the same presumption of legality as any other contract" (*Bloomfield v Bloomfield*, 97 NY2d 188, 193 [2001]). We disagree with the dissent's conclusion that there is an issue of fact as to whether the property division provisions of the instant agreement are unconscionable. An unconscionable contract is one "which is so grossly unreasonable as to be unenforcible because of an absence of meaningful choice on part of one of the parties together with contract terms which are unreasonably favorable to the other party" (*King v Fox*, 7 NY3d 181, 191 [2006]). Here, meaningful choice is not an issue inasmuch as defendant knowingly entered into the agreement against the advice of her counsel.

Although defendant's waiver of spousal support was not unfair or unreasonable at the time she signed the agreement, given her knowing and voluntary execution thereof with benefit of counsel, factual issues exist as to whether the waiver would be unconscionable as applied to the present circumstances (*see* Domestic Relations Law § 236 [B] [3] [3]). Child support award for the parties' two children has not been established, and it is unclear whether defendant would become a public charge without spousal support (*see Cron*, 8 AD3d at 187; *see also* Domestic Relations Law § 236 [B] [3] [3]; General Obligations Law § 5-311; *Bloomfield*, 97 NY2d at 194). Also, it is unclear whether waiver of all spousal support would result in inequality "so strong and manifest as to shock the conscience and confound the judgment of any [person] of common sense" (*Christian*, 42 NY2d at 71 [internal quotation marks omitted]). In particular, the evidence shows that, despite the 15-year marriage, under the agreement, plaintiff would be entitled to retain property valued at about $4,600,000, while defendant would be entitled to only an IRA account valued at approximately $30,550. She claims that she has no other assets or sources of income, and could no longer work, given that she is now 50 years old and that plaintiff had thwarted her efforts to get a college education and pursue a career during the marriage. Plaintiff, however, contends that defendant chose not to get a college degree or pursue a career, and that, while he supported her various business projects, the projects failed or she would quit after losing interest. Accordingly, we find that issues of fact exist as to whether the maintenance waiver would be unconscionable as applied to the current circumstances. Concur—Andrias, J.P., DeGrasse and Freedman, J.

Manzanet-Daniels, J., dissents in part as follows: I agree with the majority that the motion court properly held that an issue

of fact exists as to whether maintenance waiver contained in the parties' prenuptial agreement is unconscionable under the standard set forth in section 236 (B) (3) of the Domestic Relations Law. I would also find that an issue of fact exists as to whether the property waiver contained in the agreement is unconscionable (see Christian v Christian, 42 NY2d 63 [1977]; Bloomfield v Bloomfield, 281 AD2d 301 [2001], revd on other grounds 97 NY2d 188 [2001]).

Defendant wife was born in Guyana, the second of seven children. She arrived in the United States in 1981, at the age of 21. She obtained a GED in 1982, and worked menial jobs. In 1989, she worked part-time as a receptionist for plaintiff husband's family business. While working there, she and plaintiff began to date, and in 1993, she moved in with plaintiff at his apartment located on Sutton Place. Other than sporadic attempts at small business ventures, the wife did not work outside the home for the duration of the marriage (indeed, to the present day). She has no further education and no special skills.

The parties were married on November 11, 1995. A prenuptial agreement was presented to the wife approximately two weeks prior to the wedding. Schedules attached to the agreement indicated that plaintiff husband had no liabilities and total assets in the amount of approximately $580,000, including a cooperative apartment and an interest in a family trust with an unspecified value. Defendant wife, on the other hand, had only $2,500 in a bank account, jewelry and a fur coat valued at less than $20,000, collectively. Under the terms of the prenuptial agreement, the wife waived any claims to any property that the husband owned or acquired not only prior to, but also subsequent to the marriage. She further waived any right of election. The agreement contained a complete maintenance waiver, irrespective of the length of the marriage or whether the marriage produced children. The agreement also provided that the wife would forfeit any gifts or jewelry she had been given before and during the marriage.

The parties had been married 15 years when the husband initiated divorce proceedings in late 2010. Their sons are presently 14 and 7 years of age.

In January 2011, the wife moved for summary judgment declaring the parties' prenuptial agreement void. The motion court sustained the property division provisions of the prenuptial agreement and determined that her waiver of maintenance was fair and reasonable at the time of the execution of the agreement, but set a hearing to determine whether the maintenance waiver was unconscionable in light of present circumstances.

I agree with the majority that the motion court properly set down for a hearing the issue of whether the maintenance waiver is unconscionable. I would also find, however, that an issue exists as to whether the property division provisions of the prenuptial agreement are unconscionable under the common-law standard. The instant agreement is so one-sided and the inequality "so strong and manifest as to shock the conscience and confound the judgment of any [person] of common sense" (*Christian v Christian*, 42 NY2d at 63 [internal quotation marks omitted]).

The husband's net worth as of the execution of the agreement was $580,000; the wife's was $19,200, only $2,500 of which represented liquid assets she was entitled to retain upon dissolution of the marriage. The husband has a current net worth of approximately $4.6 million; the wife has a current net worth of $30,554. Thus, during the 15-year period the parties were married, the husband's net worth increased in excess of $4 million, whereas the wife's net worth only marginally increased. Given the disparity of the property distribution division, it would be difficult to conceive of an instance in which the unconscionability standard has any real purpose, if not applied to this agreement. The instant agreement does not, like others we have upheld, provide some measure of distribution to the nonmonied spouse varying in degree based on the length of the marriage and whether the marriage has produced any children. Indeed, not only does the wife receive no property, under any circumstances (nor any maintenance), but she is required to forfeit jewelry and gifts given to her during the marriage.

In *Bloomfield v Bloomfield* (281 AD2d 301 [2001], *revd on other grounds* 97 NY2d 188 [2001]), this Court affirmed Supreme Court's determination that the parties' prenuptial agreement was unenforceable as per the General Obligations Law in effect at the time. We went on to state: "[I]t also appears that the agreement could be held unconscionable. . . . This prenuptial agreement, which provides for no division of property at the end of the marriage, without regard for when, how or why it ends, and absolutely no right of election, is manifestly unfair. No rational person would agree to this arrangement and no fair and honest person would accept it. Equity must intervene to prevent an injustice." (281 AD2d at 305 [internal citations omitted]). Although the statutory standard set forth in section 236 (B) (3) of the Domestic Relations Law may be inapplicable to adjudge the property division provisions of the agreement, traditional common-law standards apply to test the validity and enforceability of the agreement as a

whole (*see Christian v Christian*, 42 NY2d 63 [1977] [holding property division provisions of separation agreement so unconscionable as to be unenforceable]). There are instances in which an agreement is so one-sided that, in the words of the Court, "no [person] in his [or her] senses and not under delusion would make on the one hand, and . . . no honest and fair [person] would accept on the other" (*Christian*, 42 NY2d at 71 [internal quotation marks omitted]). We have held that equitable principles must be taken into account in deciding whether to vacate property settlement agreements between spouses on grounds that might otherwise be insufficient to nullify an ordinary contract since "[a]greements between spouses, unlike ordinary business contracts, involve a fiduciary relationship requiring the utmost of good faith . . . [I]t is appropriate to take into account these common-law equitable factors, notwithstanding the inapplicability here of the broader fair and reasonable [when made] and . . . not unconscionable at final judgment statutory standard" (*Goldman v Goldman*, 118 AD2d 498, 500 [1986] [internal quotation marks omitted]).

The parties' agreement provides for no division of property at the end of a lengthy marriage producing two children, without any consideration to the contribution the wife may have made towards its acquisition. Indeed, the agreement requires that the wife return any jewelry and gifts she had been given before and during the marriage. I would accordingly find that an issue of fact exists as to the unconscionability of the property division provision of the parties' prenuptial agreement, and remand for further consideration.

Freedman, J., dissents in part as follows: I respectfully dissent and would modify the decision below as follows. I agree that the wife is not entitled to summary judgment declaring the parties' prenuptial agreement dated November 1, 1995 void as unconscionable with respect to either the property division or maintenance waiver, but would find that the conscionability of the property division or equitable distribution waiver, as well as that of the maintenance waiver, should be explored at a hearing.

The agreement, entered into 15 years earlier, less than two weeks before the marriage, provided that the parties waive any claim to maintenance in the event of divorce and that all property acquired by either party before or during the marriage shall remain the separate property of that party except for gifts or jewelry or family heirlooms given by one party to the other, which must be returned to the gifting party in the event of divorce. Prior to the signing of the prenuptial agreement, the

husband retained counsel for the wife who advised the wife that the agreement was completely unfair and that she should not sign it.

Defendant signed the prenuptial agreement despite the fact that she had not worked for two years prior to the marriage; that she had dropped out of high school in Guayana (but later obtained a GED); that her future husband was a lawyer; that her only assets were $2,500 other than jewelry plaintiff had given her; that plaintiff husband's assets were in excess of $900,000; and that counsel advised against signing the agreement.

The parties now have two children ages 7 and 14. The husband owns the apartment that he purchased during the marriage for $900,000 but may be worth $3,000,000 (with no mortgage). His net worth statement lists bank, investment and retirement accounts in his name valued at approximately $1,745,000. The evidence shows that, despite their 15-year marriage, under the agreement, plaintiff would be entitled to retain property valued at about $4,600,000, while defendant would have no other assets than an IRA account valued at approximately $30,550. She claims that given that she is now 50 years old and that plaintiff had thwarted her efforts to get a college education and pursue a career during the marriage, the waiver provisions are unconscionable. Plaintiff, however, contends that defendant chose not to get a college degree or pursue a career, and that, while he supported her various business projects, the projects failed or she would quit after losing interest.

The motion court held that Domestic Relations Law § 236 (B) (3) permits parties to make agreements before, after or during marriage concerning property division and spousal maintenance, but that maintenance provisions are subject to General Obligations Law § 5-311, which prohibits waivers of maintenance where the spouse is in danger of becoming a public charge. Additionally, Domestic Relations Law § 236 (B) (3) requires that the terms of maintenance provisions be "fair and reasonable at the time of the making of the agreement and . . . not unconscionable at the time of entry of final judgment." With respect to property division provisions of an agreement, the court noted that they are void as unconscionable if they are unconscionable on their face. The court then determined that defendant wife failed to show that there was any "inequitable conduct or other infirmity" on the plaintiff's part inducing her to sign the agreement, and she signed it willingly in spite of her lawyer's contrary advice. The court found that the property division aspects

of the agreement, "while perhaps improvident for the [w]ife, are not unconscionable." With respect to spousal support, the court found that the wife's waiver of maintenance was fair and reasonable at the time of execution, but that it was less clear whether it is unconscionable under the present circumstances, in part because the parties have two children and the child support award had not yet been determined. The court denied defendant's request for summary judgment voiding the agreement and deferred determination of unconscionability with reference to the maintenance waiver to a hearing at which time the issue of the 50-year old wife's failure to work outside the home or pursue an education would be relevant.

The court, in effect, granted summary judgment to plaintiff with respect to the property allocation which included return of all jewelry and heirlooms that he gave defendant before and during the marriage. However, it did not decide the maintenance issue based on the unconscionability provision of Domestic Relations Law § 236 (B) (3) (3) and the danger of becoming a public charge provision of General Obligations Law § 5-311.

Although the parties fully disclosed their respective assets and net worth, and the agreement was reviewed by independent counsel, who defendant admits had told her that the agreement was "completely unfair" and advised against signing it (*Strong v Dubin*, 48 AD3d 232 [2008]; *Cron v Cron*, 8 AD3d 186 [2004], *lv dismissed* 7 NY3d 864 [2006], *lv denied* 10 NY3d 703 [2008]), the court should still look at the impact of the agreement at the time of its implementation (*Cron* at 186-187; *see also Bloomfield v Bloomfield*, 97 NY2d 188, 194 [2001]). Defendant's claim that she believed that there would be no wedding if she did not sign the agreement, that the wedding was only two weeks away and that wedding plans had been made, may have been insufficient to demonstrate duress (*see Colello v Colello*, 9 AD3d 855, 858 [2004]). However, where, as here, application of the provision would result in plaintiff retaining essentially all the property acquired before and during the marriage and thus appears "manifestly unfair to a spouse because of the other's overreaching," the court should make sure it does not contain an unconscionable bargain that "no [person] in his [or her] senses and not under delusion would make" (*Christian v Christian*, 42 NY2d 63, 72, 71 [1977] [internal quotation marks omitted]; *see Bloomfield*, 97 NY2d at 194; *McCaughey v McCaughey*, 205 AD3d 330, 331 [1994]).