■ Anonymous, Appellant-Respondent, v Anonymous, Respondent-Appellant. [999 NYS2d 386]—

Order, Supreme Court, New York County (Ellen Gesmer, J.), entered on or about May 10, 2013, which, to the extent appealed from as limited by the briefs, denied plaintiff's request for an extension of time to challenge the parties' prenuptial agreement, limited plaintiff's award of counsel fees in accordance with the prenuptial agreement, limited defendant's obligation regarding payment of the costs of a car and driver used by plaintiff and the parties' children, and denied plaintiff's request for an order directing defendant to pay the expenses on the parties' Michigan house, modified, on the law and the facts, to the extent of vacating the limitation on plaintiff's award of counsel fees, and directing the court to determine at trial whether the counsel fee provision in the prenuptial agreement is unenforceable, and otherwise affirmed, without costs. Order, same court and Justice, entered on or about November 21, 2013, which, to the extent appealed from as limited by the briefs, denied plaintiff's motion to renew her request that defendant make all payments necessary for the use and upkeep of the car and driver, and granted plaintiff's motion for interim counsel fees to the extent of awarding her $300,000 in interim fees for the preparation of the custody trial subject to recoupment, unanimously affirmed, without costs. Order, same court and Justice, entered December 18, 2013, which, to the extent appealable, denied plaintiff's motion for a pendente lite order directing defendant to pay for the car and driver, unanimously affirmed, without costs.

In this matrimonial action plaintiff wife seeks, among other

things, to set aside the parties' prenuptial agreement. The parties entered into a so-ordered stipulation on July 12, 2012, agreeing that any challenge to the prenuptial agreement would be made by August 31, 2012. Plaintiff seeks an extension of time to challenge the agreement. She alleges that the agreement as a whole should be invalidated because she was pressured into signing it just hours before the rehearsal dinner on the night before the wedding. She also claims that defendant husband told her that he would rip up the agreement after they were married for 10 years. Plaintiff further alleges that her attorneys need to conduct discovery regarding the agreement in order for her to prove the allegations that provisions of the agreement are unconscionable, and that defendant should be directed to pay expert and attorneys fees necessary to conduct such discovery.

While a court has the authority to extend the time limits set forth in a so-ordered stipulation, here the motion court providently exercised its discretion in denying plaintiff's request for an extension of time to challenge the prenuptial agreement, especially since she failed to demonstrate good cause for a further extension (*see* CPLR 2004). Additionally, as discussed below, plaintiff's arguments regarding the validity of the agreement lack merit.

New York has a long-standing "strong public policy favoring individuals ordering and deciding their own interests through contractual arrangements" (*Matter of Greiff*, 92 NY2d 341, 344 [1998]). It is axiomatic that a duly executed prenuptial agreement is presumed to be valid and controlling unless and until the party challenging it meets his or her very high burden to set it aside (*see Bloomfield v Bloomfield*, 97 NY2d 188, 193 [2001]). However, in many instances, "agreements addressing matrimonial issues have been subjected to limitations and scrutiny beyond that afforded contracts in general" (*Kessler v Kessler*, 33 AD3d 42, 46 [2d Dept 2006], *lv dismissed* 8 NY3d 968 [2007]). Although "there is a heavy presumption that a deliberately prepared and executed written instrument manifests the true intention of the parties" (*Brassey v Brassey*, 154 AD2d 293, 295 [1st Dept 1989]), an agreement between prospective spouses may be invalidated if the party challenging the agreement demonstrates that it was the product of fraud, duress, or other inequitable conduct (*see Christian v Christian*, 42 NY2d 63, 72 [1977]). Nevertheless, such results remain the exception rather than the rule. The burden of producing evidence of such fraud, duress or overreaching is on the party asserting the invalidity of the agreement (*Matter of Greiff*, 92 NY2d at 344; *Cohen v Cohen*, 93 AD3d 506 [1st Dept 2012]).

Here, the court correctly determined that plaintiff did not meet her burden of establishing grounds to set aside the agreement as a whole. Contrary to her claim that she was pressured into signing the agreement, the record is clear that this agreement was negotiated over approximately four weeks. Plaintiff was represented throughout that time by highly competent and experienced matrimonial counsel. The agreement went through six drafts before a final copy was signed and changes in the terms of the agreement requested by plaintiff's counsel were incorporated into the final document. The agreement expressly disclaims any reliance on representations other than those set forth in the agreement, and extrinsic evidence regarding the parties' intent may not be considered unless a court first finds that the agreement is ambiguous, which in this case it is not (see *Van Kipnis v Van Kipnis*, 11 NY3d 573, 577 [2008]).

Plaintiff argues that defendant's admitted failure to transfer to her one of the properties he owns in Michigan pursuant to the terms of the agreement is evidence of fraud. However, the record establishes shows that in the 12 years of the marriage, no demand was made for the transfer of this particular property. In fact, plaintiff apparently raised no objection when this property was sold during the course of the marriage. Defendant contends that the failure to effect a formal transfer of this property was an oversight and has agreed to give plaintiff the proceeds of the sale, plus interest, as part of an equitable distribution settlement. Thus, plaintiff, who never raised this issue prior to the commencement of this action, failed to demonstrate that she was fraudulently induced into signing the agreement by defendant's promise to transfer that property to her. At best, she may have a cause of action for breach of contract and is entitled to receive the value of the property in equitable distribution, as indicated by the court (see *Ungar v Savett*, 84 AD3d 1460, 1461 [3d Dept 2011]).

Defendant's failure to disclose the entirety of his financial interests is also not a reason to vitiate the contract (see *Strong v Dubin*, 48 AD3d 232, 233 [1st Dept 2008]; see also *Smith v Walsh-Smith*, 66 AD3d 534, 535 [1st Dept 2009], *lv denied* 14 NY3d 704 [2010]). Plaintiff was well acquainted with defendant's assets, and she specifically acknowledged in the agreement that the amounts she would receive "are so significantly less than either [defendant's] assets or annual income that the precise amount of [his] assets and income is irrelevant to her decision to enter into this Agreement and the enforceability of this Agreement." Indeed, the parties anticipated at the time of the agreement that defendant's assets would continue to rise

significantly. In the face of such an acknowledgment, she cannot claim that the agreement is invalid based on a failure to disclose assets.

With respect to plaintiff's claim that the maintenance provisions are unconscionable, we note that "an agreement concerning the amount and duration of spousal maintenance must be fair and reasonable at the time it is made, and not unconscionable at the time of entry of final judgment in the divorce action" (*Kessler*, 33 AD3d at 46). Moreover, courts have the authority to review maintenance agreements to ensure such agreements are not unconscionable at the time of the entry of the judgment of divorce (Domestic Relations Law § 236 [B] [3] [3]; *see Colello v Colello*, 9 AD3d 855, 860 [4th Dept 2004]). Since the motion court has permitted plaintiff to challenge at trial whether the maintenance provision in the agreement is presently unconscionable in terms of plaintiff's current needs, expenses, and income, this issue may serve as a basis to set aside that provision of the agreement.[1]

The motion court providently exercised its discretion in declining to order defendant to pay, pendente lite, the expenses of the Michigan vacation property, which, defendant contends, he has been paying. The court further properly declined to direct defendant to pay, pendente lite, the expenses of a car and driver since plaintiff has regained the ability to drive. A speedy trial is plaintiff's remedy for these perceived inequities in the pendente lite award (*see Sumner v Sumner*, 289 AD2d 129, 130 [1st Dept 2001]). Further, the court properly denied plaintiff's motion to renew her request regarding the car and driver, as the purported new facts regarding the parties' daughter would not change the prior determination (*see* CPLR 2221 [e] [2]). To the extent plaintiff sought leave to reargue her request, the denial of that motion is not appealable (*see Windham v New York City Tr. Auth.*, 115 AD3d 597, 599 [1st Dept 2014]).

The court also providently exercised its discretion in awarding plaintiff $300,000 in interim counsel fees for trial preparation on child-related issues on condition that she present documentation of legal work within 30 days after trial (*see* Domestic Relations Law § 237). However, given the unique procedural posture of this case and the great disparity between the parties' finances both at the time of the execution of the prenuptial agreement and at the time of the commencement of this action, plaintiff's request for counsel fees beyond those incurred for child-related issues is an issue appropriate to leave

---

1. Defendant has not appealed that portion of Supreme Court's order setting the maintenance issue down for trial.

for trial (*see Kessler*, 33 AD3d at 47-48). As Supreme Court has ruled that plaintiff is entitled to a hearing on her challenge to the maintenance provisions of the prenuptial agreement, and, as noted, that ruling is not challenged on appeal, an award of counsel fees *may* be necessary despite the fee waiver, "as justice requires" (Domestic Relations Law § 237 [a]) in order to ensure a level playing field to litigate her claim.[2] Accordingly, we direct that the question of the validity of the counsel fee provision for non-child-related issues in the parties' agreement should be considered at trial. Concur—Sweeny, J.P., Renwick and Kapnick, JJ.

Andrias and Saxe, JJ., concur in a separate memorandum by Saxe, J., as follows: We are confronted on this matrimonial appeal with a conflict between the supremacy of two important but divergent facets of public policy: "the strong public policy favoring individuals ordering and deciding their own interests through contractual arrangements" with prenuptial agreements (*Bloomfield v Bloomfield*, 97 NY2d 188 [2001]), and the competing policy—enunciated in Domestic Relations Law § 237 (a)—in favor of ensuring that nonmonied spouses have the ability to litigate legitimate issues (*see Silverman v Silverman*, 304 AD2d 41, 48 [1st Dept 2003]).

The parties entered into a prenuptial agreement that included a waiver of counsel fees. The wife sought to challenge the validity of the prenuptial agreement, and moved for various relief. I agree with the majority's affirmance of the denial of plaintiff's requests (1) for an extension of time to challenge the parties' prenuptial agreement, (2) for an order directing defendant to pay, pendente lite, the expenses for the Michigan house or for a car and driver once plaintiff regained the ability to drive, and (3) to renew her earlier request regarding the car and driver, based on purported new facts regarding the parties' daughter. I also agree with the majority that it was a provident exercise of discretion for the motion court to award plaintiff $300,000 in interim counsel fees for trial preparation on issues of child support and custody, on condition that she present documentation of the legal work within 30 days after trial.

However, one aspect of the majority's opinion seems to me to require a more elaborate explanation that what is provided, although I agree with the result. That aspect of the ruling modi-

---

2. We do not share the concern of our concurring colleague that our decision will encourage baseless fee applications which may unnecessarily be referred to trial. Our decision does nothing to alter or expand well settled precedent regarding enforcement of valid prenuptial agreements. Our trial court has the expertise and experience to reject such fee applications.

fies the order on appeal insofar as Supreme Court denied counsel fees for any issues other than child-related matters, in view of plaintiff's waiver of counsel fees contained in the prenuptial agreement. Our order, despite that fee waiver, directs Supreme Court to determine at trial whether the fee waiver may be set aside, with the following explanation:

"[P]laintiff's request for counsel fees beyond those incurred for child-related issues is an issue appropriate to leave for trial (*see Kessler*, 33 AD3d at 47-48). As Supreme Court has ruled that plaintiff is entitled to a hearing on her challenge to the maintenance provisions of the prenuptial agreement, and, as noted, that ruling is not challenged on appeal, an award of counsel fees *may* be necessary despite the fee waiver, 'as justice requires' (Domestic Relations Law § 237 [a]) in order to ensure a level playing field to litigate her claim."

I agree with the majority that under the unique procedural posture of this matter, it is appropriate to leave for trial the question of whether plaintiff may be entitled to an award of counsel fees for the litigation of the non-child-related issue of maintenance. However, I believe that given the strong possibility that this ruling may be misunderstood or misapplied, substantially more examination and discussion of our holding is required. I therefore write separately to discuss the limited circumstances where it is appropriate to consider awarding counsel fees despite such a fee waiver.

Initially, it is important to strongly emphasize that under most circumstances, courts should enforce counsel fee waivers contained in prenuptial agreements. The law sets the bar very high for a party seeking to void provisions of a prenuptial agreement (*see Van Kipnis v Van Kipnis*, 11 NY3d 573, 577 [2008]; *Barocas v Barocas*, 94 AD3d 551, 551-552 [2012]). As a general rule, "[d]uly executed prenuptial agreements are accorded the same presumption of legality as any other contract" (*Bloomfield v Bloomfield*, 97 NY2d 188, 193 [2001]). And, most importantly for the present purposes, prenuptial agreements most often involve substantial disparities of wealth between the parties; nevertheless, such disparities by themselves do not create grounds to set aside marital agreements (*see Smith v Walsh-Smith*, 66 AD3d 534, 535 [1st Dept 2009]; *Strong v Dubin*, 48 AD3d 232, 233 [1st Dept 2008]).

Of course, prenuptial agreements may be set aside in their entirety on grounds of "fraud, duress, or other inequitable conduct" (*Cioffi-Petrakis v Petrakis*, 103 AD3d 766, 767 [2d Dept 2013]). Nevertheless, such results remain the exception rather than the rule. As one Nassau County Supreme Court

Justice has aptly observed, a prenuptial agreement is likely to be upheld as long as "each spouse retains a lawyer [of] his or her own choosing, is provided with a proposed agreement with sufficient time to give due consideration to the serious consequences of the proposed terms, is given fair and adequate disclosure, and is presented with an agreement that does not scream inequity or will leave one party practically destitute" (*C.S. v L.S.*, NYLJ 1202610051412, *8 [Sup Ct, Nassau Co June 6, 2013]; *see* Alton L. Abramowitz, *'Live by the Prenup, Die by the Prenup!,'* NYLJ, Aug. 29, 2013 at 3, col 1).

When a prenuptial agreement is not set aside in its entirety based on fraud or unconscionability, specific provisions of it may still be stricken. This is because Domestic Relations Law § 236 (B) (3) dictates that extra scrutiny be given to maintenance and child support provisions of marital agreements, defined as agreements "made before or during the marriage" (Domestic Relations Law § 236 [B] [3]). While the statute directs that property distribution provisions are "valid and enforceable" as long as they are "in writing, subscribed by the parties, and acknowledged or proven in the manner required to entitle a deed to be recorded" (*id.*), it specifies that maintenance provisions are valid and enforceable "provided that such terms were fair and reasonable at the time of the making of the agreement and are not unconscionable at the time of entry of final judgment." In addition, such provisions are subject to General Obligations Law § 5-311, which prohibits marital agreements that relieve either spouse of the support obligation to the extent that the other is likely to become a public charge (*id.*). With regard to child support provisions, the statute directs that they shall remain subject to the protections of Domestic Relations Law § 236 (*id.*).* So, only in those respects does the law dictate that prenuptial agreements waiving or limiting claims by one spouse against the other must receive a greater degree of scrutiny than ordinary contracts when considering whether they must be enforced.

It is important to note that the heightened standard that the Domestic Relations Law creates for review of maintenance and child support provisions of marital agreements has no counter-

---

* Notably, I am not addressing here the potential need for awards of counsel fees, despite fee waivers, needed to litigate child-related disputes. Indeed, in the present case, the parties' prenuptial agreement properly allows for court awards of fees for child-related issues, albeit providing for their award at the conclusion of the litigation, without consideration of whether the non-monied spouse will have the ability to assume that cost. The present discussion is limited to awards of counsel fees for non-child-related legal work where the client waived such counsel fees in a prenuptial agreement.

part for counsel fee waivers contained in such agreements. There is simply no statutory basis for setting aside a presumptively valid counsel fee waiver on any grounds other than the usual grounds for setting aside a contract provision, such as unconscionability based on overreaching or inequitable conduct in the execution of the agreement (*see Barocas v Barocas*, 94 AD3d at 552). Accordingly, when a valid prenuptial agreement includes a waiver of counsel fees, ordinarily there is no viable basis for an award of such fees under section 237.

Nevertheless, there may be circumstances when a triable issue emerges despite the existence of a prenuptial agreement, and the possible need for litigation of that triable issue creates with it a possibility—*not* a certainty—that the agreement's fee waiver may be found unenforceable to that extent.

The case of *Kessler v Kessler* (33 AD3d 42 [2d Dept 2006], *lv dismissed* 8 NY3d 968 [2007]) helps illustrate this concept. There, although the remainder of the prenuptial agreement was upheld, the Second Department affirmed an order holding a prenuptial agreement's fee waiver to be "unconscionable and unenforceable in light of the strong public policy embodied in Domestic Relations 237 (a)." The Court acknowledged the inherent conflict between the "strong public policy favoring individuals ordering and deciding their own interests through contractual arrangements," and the policy embodied in Domestic Relations Law § 237, "in favor of assuring that matrimonial matters are determined by parties operating on a level playing field" (*Kessler*, 33 AD3d at 45). Being careful to recognize that "not every agreement waiving the right to seek an award of an attorney's fee should be set aside" (*id.* at 47), the Second Department concluded that "[i]f . . . enforcement of the [fee waiver] would preclude the nonmonied spouse from carrying on or defending a matrimonial action as justice requires, the provision may be held unenforceable" (*id.* at 48). In setting aside the fee waiver, the Court of Appeals pointed to the wife's suggestion that even if the prenuptial agreement was upheld, there were triable issues concerning what property was covered by the agreement and what was acquired after the agreement. Therefore, a legitimate need for some litigation was presented, creating a valid basis for an award of counsel fees despite the valid prenuptial agreement.

Here, the issue that needs to be tried, which *may* make an award of counsel fees necessary despite the fee waiver, in order to ensure a level playing field, is not an issue that the prenuptial agreement failed to cover, as was the case in *Kessler*. Rather, the motion court ruled that the wife is entitled to a hearing on

her challenge to the maintenance provisions of the prenuptial agreement, *and that ruling is not challenged on appeal*. Consequently, although nothing in the record before this Court justifies the need for such a hearing, we must accept, based on the unchallenged ruling, that plaintiff has made the requisite showing establishing the existence of a potentially meritorious challenge to the maintenance provision of the prenuptial agreement, which could, in turn, give her a legitimate basis to challenge her fee waiver.

It bears emphasis that awarding counsel fees despite a fee waiver, or even finding a triable issue regarding whether counsel fees should be awarded despite a fee waiver, is not normally warranted where the parties entered into a valid prenuptial agreement—and a disparity between the parties' finances does not, in itself, change that fact. Rather, the presented circumstances must be such as would actually preclude the nonmonied spouse from carrying on or defending a viable claim requiring litigation, so that justice could require an award of counsel fees to the non-monied spouse as contemplated by Domestic Relations Law § 237 (a), notwithstanding that spouse's fee waiver. The need to conduct a fact-finding inquiry into whether justice requires an award of counsel fees despite a fee waiver will only emerge where the party challenging the waiver has made a prima facie showing that there is a meritorious, or at least potentially meritorious, challenge to terms of the prenuptial agreement, prompting the need for litigation.

The majority's decision referring for trial the issue of the fee waiver's validity, without sufficient discussion, could encourage future baseless applications for awards of counsel fees despite fairly-negotiated, valid prenuptial agreements containing fee waivers. I am concerned about more than just the possibility of baseless awards of counsel fees in such situations; I also anticipate that fee applications which ought to be rejected outright may unnecessarily be referred for trial regarding the issue of the enforceability of the fee waiver. This would in turn result in the accrual of unnecessary fees, which additional costs will then be included in settlement demands, any time a court perceives an issue of fact regarding the enforceability of provisions of a facially valid prenuptial agreement.

To be clear, awarding counsel fees or trying the issue of whether such fees should be awarded despite a fee waiver, should be considered only in the narrowest of circumstances, when (1) litigation of an issue is required although it is covered by the parties' prenuptial agreement, and (2) justice requires an award of fees to allow the nonmonied spouse to litigate that issue (Domestic Relations Law 237 [a]).