OPINION OF THE COURT
Jeffrey S. Sunshine, J.
Introduction
In this matrimonial action, the court must, under the facts and circumstances presented, deny plaintiffs application for service of the summons by Facebook without prejudice to future application.
Procedural History
Plaintiff wife filed an ex parte order for service of summons by publication to Facebook dated October 17, 2016. In her affidavit in support plaintiff wife avers that she and defendant were married on June 22, 2011 in New York State but that defendant left the marital residence in September 2011 without providing her any contact information. Plaintiff avers that two months later—approximately five months after the marriage— she gave birth to a child whom, she posits, is not the biological child of defendant. Plaintiff argues that defendant has been deported and that she believes he is living in Saudi Arabia.
Argument
Plaintiff avers that she has “made every effort to locate” defendant to personally serve him with the summons for divorce but has not been successful. She posits that she has grounds for divorce because, she alleges, defendant abandoned the marital residence more than five years ago and has not returned. She avers that she has attempted to locate defendant as follows: contacting family members and family friends and by searching public records. Counsel, in his affirmation in support, affirms that he has made numerous requests for information about defendant’s whereabouts from “numerous governmental entities” including the New York State Department of Motor Vehicles and military service lists and that defendant is not on active duty with any branch of the military service. Plaintiff’s counsel argues that since there has been no
“public record change to any of his government issued identification, most specifically his driver’s license, since 2012, there is no reason to believe that he lives anywhere in the United States to *693 which a summons can be either delivered to defendant or to a person of suitable age and discretion.”
In support, a Freedom of Information Law response from the New York State Department of Motor Vehicles dated June 3, 2016 was annexed showing that defendant’s driver’s license was suspended in 2012.
Plaintiff contends that Saudi Arabia is not a signatory to the Hague Convention and, therefore, plaintiff cannot ensure service in the foreign jurisdiction.
Plaintiff argues that she only discovered that defendant is in Saudi Arabia because defendant maintains two profiles on Face-book listing that as his location. Plaintiff’s counsel, in his affirmation in support, states that his client informed him that she had “been in communication with [defendant] via Face-Book.” He argues that based upon that information “plaintiff has demonstrated that publication to FaceBook of the summons is likely to place upon the defendant sufficient notice to advise the defendant that he is being sued for divorce.”
She argues that she cannot obtain foreign service upon defendant because Saudi Arabia is not a signatory to the Hague Convention. She contends that the cost of publishing the summons in a local newspaper “could cost in excess of three thousand ($3,000.00) DOLLARS” and that she “barely makes enough money to feed [her] family” and cannot afford to incur that expense. She avers that her counsel accepted a “discounted rate” to assist her in this application.
Plaintiff’s counsel argues in his affirmation that alternative service pursuant to CPLR 308 (5) is appropriate in this case because, he argues, personal service upon defendant cannot be made and “substituted service” on a person of suitable age and discretion (CPLR 308 [2]) or using “nail and mail” service (CPLR 308 [4]) would be impracticable. He further contends that serving the summons through Facebook can be reasonably expected to give defendant “actual notice that he is being sued for divorce.”
Plaintiff contends that under the facts and circumstances presented here service by Facebook would be, under the circumstances presented here, “reasonably calculated, under the circumstances, to apprise [the defendant] of the pendency of the action.”
*694 Discussion
It is well established that CPLR 308 (5) vests a court with the discretion to direct an alternative method of service of process when it has determined that the methods set forth in CPLR 308 (1), (2) and (4) are impracticable (see State St. Bank & Trust Co. v Coakley, 16 AD3d 403 [2d Dept 2005]; see also CPLR 308 [5]). Although the impracticability standard “is not capable of easy definition” (Markoff v South Nassau Community Hosp., 91 AD2d 1064, 1065 [1983], affd 61 NY2d 283 [1984]), it does not require the applicant to satisfy the more stringent standard of due diligence under CPLR 308 (4), or to make a showing that actual prior attempts to serve a party under each and every method provided in the statute have been undertaken (see Astrologo v Serra, 240 AD2d 606 [2d Dept 1997]).
In Dobkin v Chapman, the Court of Appeals noted that “[d]ue process is not, however, a mechanical formula or a rigid set of rules” and that “in modern jurisprudence, the term has come to represent a realistic and reasonable evaluation of the respective interests of plaintiffs, defendants and the state under the circumstances of the particular case” (21 NY2d 490, 502 [1968]). The Court of Appeals continued in Dobkin that “[o]ur law has long been comfortable with many situations in which it was evident, as a practical matter, that parties to whom notice was ostensibly addressed would never in fact receive it” such may occur in some situations where service by publication is permitted {id.) and that the determination must be made upon the facts and circumstances before the court because “what might be inadequate notice in one kind of situation will amount to due process in another” {id. at 503).
The facts and circumstances before this court are distinguishable from the facts before the Court in the case of Safadjou v Mohammadi relied upon by plaintiff’s counsel (105 AD3d 1423 [4th Dept 2013]). In Safadjou v Mohammadi the Court permitted service by email pursuant to CPLR 308 (5); however, in that case, the record established that the plaintiff and defendant had been communicating by email and, therefore, the Court found that “plaintiff made the requisite showing that service by email was 'reasonably calculated to apprise defendant of the pending lawsuit and thus satisfie[d] due process’ ” (Safadjou v Mohammadi, 105 AD3d 1423, 1425 [4th Dept 2013], citing Harkness v Doe, 261 AD2d 846, 847 [4th Dept 1999]). Unlike the facts and circumstances presented in Safad-jou, in the application before this court plaintiff has failed to sufficiently *695 authenticate the Facebook profile as being that of defendant and has not shown that, assuming arguendo that it is defendant’s Facebook profile, defendant actually uses this Facebook page for communicating. As such, plaintiff has not demonstrated that, under the facts presented here, service by Face-book is reasonably calculated to apprise defendant of the matrimonial action.
The action for divorce has a multitude of ancillary affects on the rights and liabilities of parties. The court must be scrupulous in allowing service by a methodology most likely to give notice as not only are one’s economic responsibilities and rights to pay and receive maintenance and child support involved but also rights to property, inheritance and most importantly the constitutional right to custody and visitation (see generally Troxel v Granville, 530 US 57 [2000]). If the standard for review of an agreement in any matrimonial action is higher than that in a plenary action certainly the court must be satisfied that there is some semblance of due process notice (see generally Kessler v Kessler, 33 AD3d 42 [2d Dept 2006]).
Careful review of the profile pages annexed by plaintiff, which she purports to be defendant’s profile, indicates that the profile has not been updated since April 27, 2014.* The court further notes that while plaintiff’s counsel contends that plaintiff has communicated with defendant through Facebook the plaintiff’s affidavit is entirely silent regarding any alleged communication with defendant through Facebook including any representation regarding dates when she communicated with defendant or that she communicated with defendant through this Facebook page. The court notes that plaintiff did not annex copies of any of the alleged Facebook correspondence with defendant that she contends link him to this Facebook profile. Contrary to plaintiff’s assertions, she has not demonstrated that this profile is maintained by defendant and, therefore, while substituted service by publication may be appropriate under the facts and circumstances presented in the case at bar, plaintiff has failed to establish that service of the summons by Facebook to this profile account would, under the facts as alleged here, be “reasonably calculated” to put defend *696 ant on notice. Furthermore, assuming arguendo that plaintiff had demonstrated this to be defendant’s Facebook profile she has not demonstrated that defendant continues to use this profile currently since there is no indication that the profile has been used since April 2014. The court notes that there is no sworn statement by plaintiff that she communicated with defendant through this Facebook profile nor are there copies of any such correspondence which may support plaintiff’s claim that the profile is maintained by defendant nor is there any representation made regarding when any alleged communication through Facebook took place. The only representation included in the application is plaintiff’s counsel’s affirmation that plaintiff told him that she communicates with defendant through this Facebook account.
Before the court could consider allowing service by Facebook pursuant to CPLR 308 (5) the record must contain evidence that the Facebook profile was one that defendant actually uses for receipt of messages. The court notes that anyone can create a Facebook profile using accurate, false or incomplete information and there is no way, under the application currently pending, for the court to confirm whether the profile proffered by plaintiff is in fact the defendant’s profile and that he accesses it (see Fortunato v Chase Bank USA, N.A., 2012 WL 2086950, 2012 US Dist LEXIS 80594 [SD NY, June 7, 2012, No. 11 Civ 6608 (JFK)]). Granting this application for service by Facebook under the facts presented by plaintiff would be akin to the court permitting service by nail and mail to a building that no longer exists. For all of the foregoing reasons, plaintiff’s application for permission to serve the summons upon defendant by Facebook is denied without prejudice.

 While certainly not dispositive the court notes that the only information listed on the profile is the name “Abdullah Alshalabi”; location of “Riyadh, Saudi Arabia”; seven friends; and a profile picture of a geographic location not of an individual. The court notes that plaintiff does not allege that she knows any of the “friends” to be family or friends of the defendant.